A.E., Petitioner,

v.

Hon. Arthur G. CHRISTEAN, Judge,
Third District Juvenile Court,
Respondent.

No. 970067–CA.

Court of Appeals of Utah.

May 1, 1997.

Rehearing Denied June 27, 1997.

John E. Laherty, Salt Lake City, for Petitioner.

Brent M. Johnson, Salt Lake City, for Respondent.

Jan Graham and Jeffrey Buckner, Salt Lake City, for State of Utah.

Kristin Fadel, Salt Lake City, Guardian Ad Litem.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

A.E. has petitioned for extraordinary relief, requesting that this court order the juvenile court to hold a twelve-month dispositional review hearing. Through his counsel, the Honorable Arthur Christean argues that the juvenile court has the right to promote judicial economy in certain circumstances and thus, that it may combine a termination of parental rights and a dispositional review hearing. We believe that a dispositional review hearing is mandatory and that it may not be held at the same time as a termination of parental rights proceeding and therefore grant A.E.'s petition for extraordinary relief.

## BACKGROUND

A.E. is the mother of N.E., a minor child. When N.E. was eight months old, Primary Children's Medical Center placed N.E. in the protective custody[1] of the Division of Child and Family Services (DCFS) after a skeletal exam revealed four recent non-accidental injuries in various healing stages.[2] At the September 15, 1995 shelter hearing held pursuant to Utah Code Ann. § 78–3a–306 (1996), DCFS petitioned for custody of N.E. A.E. consented to the placement of N.E. with N.E.'s maternal grandparents (the Grandparents). The juvenile court determined that removal was reasonable and awarded temporary custody of N.E. to the Grandparents, subject to the court's continuing supervision. *See* Utah Code Ann. § 78–3a–307 (1996). Shortly thereafter, A.E. petitioned to place N.E. with other relatives as a result of alleged problems between herself and the Grandparents over visitation with N.E. The juvenile court denied A.E.'s motion.

On December 14, 1995, pursuant to Utah Code section 78–3a–310, the juvenile court held an adjudication hearing on the State's petition alleging that N.E. was an abused, neglected, and/or dependent child as defined in Utah Code Ann. § 78–3a–103(1)(a), (h), (q) (1996). At the adjudication hearing, the juvenile court found that: (1) N.E. was an abused child as defined in Utah Code Ann. § 78–3a–103(1)(a) (1996) because she had suffered physical abuse and non-accidental trauma; and (2) the State had not proven by clear and convincing evidence that A.E. caused N.E.'s non-accidental trauma. The juvenile court ordered DCFS to provide reunification services through a revised service plan, and reaffirmed placement of N.E. with the Grandparents, over A.E.'s objections. Additionally, the juvenile court ordered A.E. to comply with and successfully complete the DCFS service plan as a prerequisite to reunification with N.E.

On July 6, 1996, A.E. filed a Motion for Restoration of Custody of N.E. This motion was denied by the court without prejudice, because there were pending criminal charges

---

1. " 'Protective custody,' ... means the shelter of a child by the [DCFS] from the time he is removed from his home until the shelter hearing, or his return home, whichever occurs earlier." Utah Code Ann. § 62A–4a–101(15) (1997). Section 62A–4a–407 of the Utah Code allows a hospital to retain protective custody of a child, "not to exceed 72 hours, without the consent of the child's parent, guardian, or any other person responsible for the child's care or exercising temporary or permanent control over the child," when a physician examining or treating a child "has reason to believe that the child's life or safety will be in danger unless protective custody is exercised." *Id.* § 62A–4a–407(1).

2. Primary Children's Medical Center estimates that the injuries occurred sometime during August and September 1995.

against A.E.[3]

On August 27, 1996, the Grandparents filed a Petition to Terminate Parental Rights and Statement of Intent to Pursue Adoption in an effort to terminate A.E.'s parental rights to N.E., on grounds of unfitness, token efforts, and best interest of the child. *See* Utah Code Ann. § 78–3a–407 (1996) (listing grounds for termination of parental rights). A pre-trial hearing on the Grandparents' petition was set, but, at A.E.'s motion, the juvenile court granted a continuance due to the Grandparents' failure to perfect personal service. The juvenile court then reset the pre-trial hearing, and set a November 22, 1996, trial date on the Grandparents' petition for termination of parental rights (the termination trial).

Subsequently, A.E. filed a motion for a more definite statement, renewed her Motion and Memorandum to Restore Custody of N.E., and requested a hearing. In a November 4, 1996 ruling, the juvenile court denied A.E.'s motion for a more definite statement and stated that the issues raised in A.E.'s Motion for Restoration of Custody should be addressed "at the same time as such dispositional review hearing is held, no motion for which has yet been filed."

The Grandparents moved to amend their petition to terminate parental rights to include substantive allegations of abuse or neglect not previously pleaded.[4] The court granted the Grandparents' motion to amend their petition, over A.E.'s objection. The juvenile court, however, granted A.E.'s motion for a continuance of the termination trial until January 27, 1997, in light of the Grandparents' amended petition for termination, which included additional grounds of alleged neglect or unfitness. The juvenile court denied A.E. a hearing on her motion for restoration of custody pending the termination trial.

On November 18, 1996, the State moved for a dispositional review hearing pursuant to Utah Code Ann. § 78–3a–312 (1996), and A.E. requested such a hearing on November 27, 1996. In the interest of judicial economy, the juvenile court consolidated the dispositional review hearing with the termination trial.

On December 11, 1996, the State filed a petition to terminate A.E.'s parental rights in N.E. In January 1997, both the State and the Grandparents moved for a continuance. A.E. objected to an additional continuance of the termination trial, and further requested that if another continuance was granted, the court hold a dispositional review hearing on one of the dates scheduled for the January termination trial.

The juvenile court granted the Grandparents' and the State's motions for continuances due to the unavailability of their expert witnesses, and again denied A.E.'s request for a dispositional review hearing, instead "reserving" A.E.'s motion to restore custody of N.E. for the termination trial. The termination trial was once again set for March 18, 1997, at which time the juvenile court was to have considered the Grandparents' and the State's petitions[5] to terminate A.E.'s parental rights.

A.E. petitioned this court for an extraordinary writ to require the juvenile court to hold a dispositional review hearing and to comply with the requirements of section 78–3a–312. The State and Judge Christean, through counsel, filed an opposition to the petition for extraordinary relief and a response, respectively. This court stayed the termination trial pending resolution of A.E.'s petition for extraordinary relief.

### ISSUE

The issue raised by A.E.'s petition for extraordinary relief is whether the juvenile

---

3. A.E. was arraigned on criminal child abuse charges in the Third Judicial District Court on April 23, 1996, and was found not guilty after a jury trial on August 21–22, 1996.

4. In the amended petition, the Grandparents seek to terminate A.E.'s parental rights on the grounds of abuse or neglect, parental unfitness and incompetence, failure to remedy circumstances, failure of parental adjustment, token ef-

forts, and best interest. *See* Utah Code Ann. § 78–3a–407 (1996). The Grandparents also seek to terminate the parental rights of an unknown father on grounds of abandonment.

5. A.E. moved to consolidate the Grandparents' and the State's petitions and the juvenile court granted her request.

court erred in refusing to hold a dispositional review hearing, as required by section 78–3a–312 of the Utah Code, separate from and prior to a trial on the petitions to terminate parental rights.

## STANDARD OF REVIEW

Whether the juvenile court had authority to postpone the dispositional review hearing and combine it with a termination of parental rights hearing is a question of law dependent on an interpretation of section 78–3a–312 of the Utah Code. " 'We review questions of statutory interpretation for correctness giving no deference to the trial court's interpretation.' " *State in re R.N.J.*, 908 P.2d 345, 349 (Utah.Ct.App.1995) (citation omitted).

## ANALYSIS

### Dispositional Review Hearing

Judge Christean argues that the juvenile court has the right to promote judicial economy in certain circumstances, and thus, it was appropriate to consolidate the dispositional review hearing with the termination of parental rights hearing. *Cf. Saunders v. Sharp*, 818 P.2d 574, 580 (Utah.Ct.App. 1991) (instructing district court not to consider "attorneys fees incurred in pursuing the underlying appeal" because "[t]his procedure promotes judicial economy and prevents expenditures of time on matters which will be moot if the [appellants] ultimately do not prevail on appeal."). Judge Christean further argues that the purpose of the dispositional review hearing is to ensure that juvenile cases are resolved quickly. This requirement, however, must be read in conjunction with other provisions of the Juvenile Court Act, which permit other petitions to be filed, he contends. While not intending to trivialize the dispositional review hearing requirement, he argues that the juvenile court should not be subject to "hyper-technical" applications of the law or to "artificial constraints," which ultimately restrain the juvenile court from determining the best interest of the child. *See State in re J.J.T.*, 877 P.2d 161, 163, 164

(Utah.Ct.App.1994) (stating "hyper-technical application of res judicata is improper in adjudications where the welfare of children is at stake."). To require the juvenile court to hold a dispositional review hearing may subject a child to being moved from one placement to another and then back again within a short time period. Moreover, Judge Christean asserts that there are some instances in which a dispositional review hearing may be redundant and/or duplicative, such as in this case, where a petition to terminate parental rights has already been filed, and thus, the juvenile court should not be forced to hold such a hearing, if at all, within the twelve-month time period or separate from other proceedings.

While we find merit in Judge Christean's discussion of judicial economy and the best interest of the child, we hold that a dispositional review hearing is mandatory and may not be combined with a termination of parental rights hearing.[6]

 We first acknowledge that enactment of and amendments to Utah's Child Welfare Act are intended to protect children and assure that they are not placed in a "legal limbo" for an unwarranted time period. *See State in re J.L.W.*, 900 P.2d 543, 549 (Utah.Ct.App.1995). Such concerns, however, cannot ignore the well-established principle "that 'a parent has a fundamental right to maintain a relationship with his or her child.' " *In re Adoption of B.O.*, 927 P.2d 202, 207 (Utah.Ct.App.1996) (citation omitted). Thus, just as judicial efficiency cannot justify actions taken "at the expense of a child's welfare," *J.L.W.*, 900 P.2d at 549, it also cannot, alone, justify erosion of a parent's interest in being reunited with his or her child, where warranted.

We next examine the statute at issue. Section 78–3a–312 provides in pertinent part:

> (1) A dispositional review hearing *shall* be held by the court no later than 12 months after the original removal of the child.
>
> . . . .

---

**6.** Prior to addressing the propriety of combining the two proceedings, we find it necessary to determine whether the dispositional review hearing is mandatory.

(3) If a child is not returned to his parent or guardian at the dispositional review hearing, the court *shall:*

 (a) order the division to develop a permanent plan, and schedule a hearing within 120 days after the dispositional review hearing to make a final determination regarding whether termination of parental rights, adoption, guardianship, or long-term foster care is the most appropriate final plan for the child;

 (b) order termination of reunification services to the parent; and

(c) in its discretion, enter any other order that it determines to be in the best interest of the child.

Utah Code Ann. § 78–3a–312 (1996) (emphasis added).

In interpreting the meaning of section 78–3a–312, we turn to the following well-accepted rules of statutory construction. "Where statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent. Rather, we are guided by the rule that a statute should generally be construed according to its plain language." *Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989); *see also Board of Educ. v. Salt Lake County,* 659 P.2d 1030, 1035 (Utah 1983) (stating terms of statute "should be given an interpretation and application which is in accord with their usually accepted meanings" in holding term "shall" mandatory). The term "shall" appears throughout the dispositional review hearing statute. *See, e.g.,* Utah Code Ann. § 78–3a–312 (1996). The term "shall" "is usually presumed mandatory and has been interpreted as such previously in this and other jurisdictions." *Board of Educ.,* 659 P.2d at 1035; *see also Herr v. Salt Lake County,* 525 P.2d 728, 729 (Utah 1974) ("The meaning of the word *shall* is ordinarily that of command."); Webster's Third New International Dictionary 2085 (1986) (defining "shall" as "used in laws, regulations, or directives to express what is mandatory"). As such, looking solely at the plain language of the statute, the dispositional review hearing requirement is mandatory.

In *Kennecott Copper Corp. v. Salt Lake County,* 575 P.2d 705 (Utah 1978), the su-preme court explained that the term "shall" may be either discretionary or mandatory depending on "whether or not the directions given an officer are for the *benefit of the taxpayer,* e.g., to give him notice and an opportunity for a hearing, or for any other purpose important to him." *Id.* at 707 (emphasis added); *see also* Annotation, *Provisions of Tax Statute as to Time for Performance of Acts by Boards or Officers as Mandatory or Directory,* 151 A.L.R. 248, 248 (1944) (distinguishing between provisions as to time for performance of duties by boards or officers as mandatory or discretionary). We apply a similar logic to the Juvenile Court Act in determining whether the term "shall" is discretionary or mandatory.

Accordingly, in determining whether the dispositional review hearing requirement is discretionary or mandatory, we look to whether the time limitations established by the statute are for the benefit of the parent and/or child. In *Kennecott,* the court determined that the tax statute at issue was directory as opposed to mandatory because "the purpose of the statute is not to protect the taxpayer." *Kennecott,* 575 P.2d at 707. Conversely, in the instant case, the time requirement must be deemed mandatory. The purpose of the dispositional review hearing statute is to protect the parent, viz., to give him or her an opportunity for a hearing within twelve months after the removal of a child, so that the child may be reunified with the parent if found to be appropriate. *See* Utah Code Ann. § 78–3a–312(1), (2) (1996). Otherwise, subsection 78–3a–312(3) requires that "[i]f a child is not returned to his parent or guardian at the dispositional review hearing, the court shall ... schedule a hearing within 120 days after the dispositional review hearing to make a final determination ... [as to] the most appropriate final plan for the child." *Id.* § 78–3a–312(3).

The 1995 amendment to this section demonstrates that not only was the Legislature concerned with giving parents an opportunity for a hearing, but it also intended this hearing to be timely—the amendment changed the time period for such a hearing from eighteen to twelve months after removal of a child. *See* Child Welfare Reform Act

Amendments, ch. 302, § 31, 1995 Utah Laws 1031, 1051; *see also J.L.W.,* 900 P.2d at 549 n. 13 (stating "[t]he Legislature has recognized the need to adjudicate such cases with reasonable dispatch by its passage of the Child Welfare Reform Act.... Under this new legislation, there are specific time lines established to prevent a child from languishing indefinitely in foster care."). Accordingly, we conclude that the dispositional review hearing is mandatory and next consider whether it may be combined with a termination of parental rights proceeding.

In interpreting a statute, we read it to harmonize it with its subsections—in this case, the twelve-month dispositional review requirement and the 120–day review for final determination. *See State v. Souza,* 846 P.2d 1313, 1317 (Utah.Ct.App.1993) (stating "[i]f there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose." (citations & quotation marks omitted)). The Juvenile Court Act establishes sequential steps which must be followed once a child is removed from a parent in abuse, neglect, and dependency proceedings. *See* Utah Code Ann. §§ 78–3a– 306, 308, 310, 312, 313 (1996). To combine a dispositional review hearing with a termination of parental rights hearing as Judge Christman suggests, would bypass the steps established by the Legislature for final determination of a child's status. In light of the time requirements established by the Legislature for abuse, neglect, and dependency proceedings, it clearly did not intend to grant the juvenile court unfettered discretion to determine when and if a dispositional review hearing should be held. Indeed, the statute contemplates that a service plan to facilitate reunification of the family may be ordered at the dispositional hearing pursuant to section 78–3a–311, and the juvenile court will determine the success of that plan at the dispositional review hearing. *See id.* § 78–3a– 312(2). If the child is not then restored to the parent, DCFS is to "develop a permanent plan" for the child. *Id.* § 78–3a–312(3)(a). In this case, however, the process was reversed, as DCFS and the Grandparents ap-

parently decided the appropriate permanency goal was to be termination of parental rights, prior to the juvenile court determining whether A.E. was successful in complying with the service plan so as to justify reunification with N.E.

Furthermore, the dispositional review hearing should not be combined with a termination of parental rights hearing because (1) it places an unfair burden on A.E., (2) the separate hearings focus the juvenile court on different issues of fact and law, and (3) each involves different burdens of proof. First, combining the dispositional review hearing with the termination of parental rights hearing places A.E. at a disadvantage. Not only is there the inference that A.E. will be unable to show improvement for purposes of a dispositional review hearing, but also an inference is likely that her parental rights should be terminated.

Second, the court's focus in a dispositional review hearing and a termination of parental rights hearing involves different issues of fact and law. The purpose of the dispositional review hearing is to determine whether it is in the best interest of the child to return the child to the parent based on the parent's efforts or progress to improve the conduct or condition alleged to be egregiously detrimental to the child. *See id.* § 78–3a– 312; *cf. id.* § 78–3a–102(5)(g) (explaining one purpose of juvenile court is to "strive to act in the best interests of the minor's in all cases and attempt to preserve and strengthen family ties where possible."). Accordingly, a dispositional review hearing is directed toward giving parents assistance and an opportunity to improve their parenting skills and be reunited with their children, and also to provide parents with notice that if they fail to remedy their conduct, their parental rights may be terminated. *Cf. State in re P.H. v. Harrison,* 783 P.2d 565, 569 (Utah.Ct. App.1989) (stating "every reasonable effort should be made to preserve the family unit.").

On the other hand, the purpose of a termination of parental rights hearing is to determine whether a petitioner has proven

by clear and convincing evidence that a parent is unfit or incompetent based on the grounds for termination of parental rights under section 78–3a–407, and that it is in the best interest of the child to terminate parental rights. *See* Utah Code Ann. §§ 78–3a–406, 407 (1996).

 Third, the burden of proof at a dispositional review hearing and a termination of parental rights hearing is different. A parent's rights may be terminated only if the grounds for termination of parental rights under section 78–3a–407 have been proven by "clear and convincing evidence." *Id.* § 78–3a–406(3). In contrast, if reunification services were ordered by the juvenile court under section 78–3a–311, the court must return custody of the child to his or her parent "unless it finds, by a *preponderance of the evidence,* that return of the child would create a substantial risk of detriment to his [or her] physical or emotional well-being." *Id.* § 78–3a–312(2)(a) (emphasis added). If reunification services were not ordered pursuant to section 78–3a–311, there is no applicable presumption or burden of proof, and the juvenile court within its discretion determines whether a parent has shown improvement so as to reunify the parent and child. *See id.* § 78–3a–312.

 Finally, the State argues that A.E. waived any right she had to a dispositional review hearing because she did not request such a hearing within twelve months of removal of N.E. We note that the statute does not specify who must request or schedule a dispositional review hearing, but simply states it "must" occur. In the circumstances of this case, given that A.E. clearly sought to regain custody of her child, we do not believe waiver can be established. *See generally Soter's Inc. v. Deseret Fed. Sav. & Loan,* 857 P.2d 935, 940 (Utah 1993) (discussing elements of waiver). Moreover, given the statute's silence, it would perhaps be good practice for DCFS, the juvenile courts, and perhaps others, to establish a standard-

ized procedure for scheduling dispositional review hearings so as to comply with the statutory mandate.[7]

## CONCLUSION

The juvenile court must hold a dispositional review hearing under section 78–3a–312. Additionally, the dispositional review hearing cannot be combined with a termination of parental rights hearing. Accordingly, we remand this case to the juvenile court to comply with the law as discussed herein.

BENCH, Judge, concurs.

ORME, Judge (concurring):

Although I am sympathetic to the concerns of Judge Christean given the heavy caseload of the Juvenile Court, I concur in Judge Greenwood's opinion. However, I wish to comment on the contention that "the juvenile court should not be subject to 'hyper-technical' applications of the law." It is true that viewing "technicalities" differently in cases where the best interests of children are in issue has become an accepted part of our jurisprudence. But in these cases, the rule or doctrine which has been moderated to accommodate the higher value of a child's best interest is a rule or doctrine of the judiciary's own making or the subject of considerable judicial refinement. *See, e.g., In re E.M.,* 922 P.2d 1282, 1284 (Utah.Ct.App.1996) (per curiam) (finality of judgments for purposes of appeal); *In re J.P.,* 921 P.2d 1012, 1016–17 (Utah.Ct.App.1996) (review of denial of Rule 59 motion), *cert. denied,* 931 P.2d 146 (Utah 1997); *In re R.N.J.,* 908 P.2d 345, 350 (Utah.Ct.App.1995) (failure to argue plain error or exceptional circumstances); *In re J.J.T.,* 877 P.2d 161, 163–64 (Utah.Ct.App. 1994) (res judicata). And indeed, if the twelve-month mandate were a creature of, say, the Utah Rules of Juvenile Procedure, I would be open to the possibility of varying the rule's application in appropriate situations.

---

7. The State also argues that because the juvenile court placed N.E. with relatives, she was not a ward of the State and section 78–3a–312 does not apply. This section, however, speaks in terms of removal of any kind. To suggest that only parents of children in DCFS custody are entitled to a dispositional review hearing would be patently unfair, particularly in light of the Child Welfare Act's preference for kinship placement of children.

But the law before us today is not a judicially developed rule or doctrine. On the contrary, it is a law, mandatory in nature, which has been enacted by the Legislature. Where laws passed by the Legislature are concerned, we simply do not enjoy the kind of flexibility we have with rules and doctrines that rely more on judicial interpretation than legislative enactment for their existence. If exceptions, escape hatches, or limitations to the mandates of section 78–3a–312 are desirable or necessary, it is for the Legislature to make them.