**STATE of Utah, in the Interest of K.M., C.M., and A.M., persons under eighteen years of age.**

**D.M., Appellant,**

**v.**

**STATE of Utah, Appellee.**

**No. 971424–CA.**

Court of Appeals of Utah.

Sept. 3, 1998.

Kent E. Snider, Public Defender Ass'n, Ogden, for Appellant.

Jan Graham, Atty. Gen., and Carol L.C. Verdoia, Asst. Atty. Gen., Civil Appeals Div., Salt Lake City, for Appellee Martha Pierce and Taniela Fiefia, Salt Lake City, Guardians Ad Litem.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

GREENWOOD, Judge:

D.M. appeals from a juvenile court order awarding permanent custody of her two older children, K.M. and C.M., to the Division of Child and Family Services (DCFS) and of her younger child, A.M., to his natural father. We affirm.

## BACKGROUND

D.M.'s three children, K.M., C.M., and A.M., were removed from her custody in late 1995 due to alleged abuse and neglect. The juvenile court heard the State's abuse/neglect petition in February 1996. Some time later, the two older children were placed in the custody of their maternal grandmother in Rhode Island, and the youngest child was placed with his natural father in Utah. The grandmother subsequently decided she could no longer care for the two children and they were brought back to Utah and placed in shelter care. At a hearing held February 18, 1997, the juvenile court awarded DCFS temporary custody of the two children and orally reminded the parties that a dispositional review hearing, which had been previously scheduled, would be held on June 12, 1997. On February 18, 1997, the court's written order was mailed to D.M.'s counsel. It stated: "The Court will review these cases on June 12, 1997 at 9:15 a.m. The June review will be the 12 month disposition review *at which time the Court will establish a permanency plan for the children.*" (Emphasis added.) The dispositional review hearing was held as scheduled on June 12, 1997.

Two DCFS social workers testified at the hearing. Social worker Michael Marsh, who had been assigned to oversee K.M.'s and C.M.'s care, indicated that although D.M. was ordered on December 14, 1995—and was again reminded at the February 1997 hearing—to enroll in parenting and anger management classes, and to successfully com-

plete outpatient drug and alcohol treatment, she only began attending parenting classes in May 1997, approximately five weeks before the June hearing. Additionally, D.M. had not attended the Weber Mental Health drug treatment program, as required, since January 14, 1997. D.M. tested positive for cocaine on January 28, 1997, and was "unsuccessfully discharged" from the drug treatment program in March 1997. Mr. Marsh indicated that because D.M. had failed "to follow through with the ordered counseling," D.M. had not successfully completed the service plan. Accordingly, Mr. Marsh recommended that the court place K.M. and C.M. in DCFS's permanent custody, and that the court terminate reunification services with their mother.

Social worker David Walser, assigned to A.M.'s case, echoed Mr. Marsh's testimony regarding D.M.'s lack of progress in completing her court-ordered service plan. Mr. Walser recommended that because A.M. was doing well with his natural father and paternal grandmother, and because D.M. had failed to comply with the service plan, the court should terminate reunification efforts with D.M. and grant permanent custody to A.M.'s natural father.

The trial court found the State had offered reasonable services, and "this matter having been adjudicated in February, 1996, the mother could have completed her obligations long before now and has failed to do so." The court further stated:

> [It has] been about 16 months since all these things were ordered subsequent to an official adjudication.... [They] could have been completed long before now.... And the mother's failure to be diligent in pursuing these things is the reason for the delay. It looks like there's been some 11th hour activity on the parenting classes but the drug and alcohol counseling still has not been completed and, and there's nothing ongoing right now in that or the anger management.
>
> So I'm going to find that it would be futile to continue reunification services at

this point and will discontinue reunification services.

The court entered written findings, which state in pertinent part:

1. Continuation in or return to the home would be contrary to the welfare of the child(ren).

2. Reasonable services have been offered to the parent or guardian by the Division of Child and Family Services or other agency.

3. Return of the child(ren) to the home would create a substantial risk to [their] physical or emotional well-being.

....

5. The permanency goal for the child(ren) has been: return home.

....

7. The permanency goal for [K.M. and C.M.] should be changed to permanent foster care.

8. It is in the best interests of [A.M.] to be returned/placed in the care, custody, and control of father; ...

....

10. The parent ... has ... failed to participate in, comply with, in whole or part, or to meet the goals of a court approved treatment plan. Mother has had plenty of time to complete her Division plan.

The trial court then ordered continued custody of K.M. and C.M. to DCFS for appropriate placement, granted the father custody of A.M., and terminated all reunification services to D.M.[1] This appeal followed.

## ISSUES

■ D.M. argues on appeal that she was not given proper notice that the juvenile court would determine permanent custody of her children at the June 1997 dispositional review hearing, thus depriving her of due process. Constitutional issues, including that of due process, are questions of law which we review for correctness. *See State v. Holland,* 921 P.2d 430, 433 (Utah 1996).

---

1. D.M. does retain certain residual parental rights to her children. *See, e.g.,* Utah Code Ann. § 78–3a–103(1)(u) (1996) (describing residual rights retained after another person or agency has custody).

■ D.M. also contends that under Utah's statutory scheme, the court improperly established a permanency plan for the children at the June 1997 dispositional review hearing. This issue requires interpretation of statutory provisions. " ' "We review questions of statutory interpretation for correctness giving no deference to the trial court's interpretation." ' " *A.E. v. Christean*, 938 P.2d 811, 814 (Utah Ct.App.1997) (quoting *State in re R.N.J.*, 908 P.2d 345, 349 (Utah Ct.App.1995) (citation omitted)).

## ANALYSIS

### Notice and Right to Due Process

D.M. argues she did not have adequate notice that the issue of permanent custody would be decided at the June 1997 dispositional review hearing, and that her right to due process was accordingly violated.

The State counters that D.M. had both actual and statutory notice, as early as February 1997, that the dispositional review hearing would be held on June 12, 1997, and that the court would then consider a permanency plan for D.M.'s children.

■ Parties to a judicial proceeding are entitled to notice "that a particular issue is being considered by a court" and must be given "an opportunity to present evidence and argument on that issue before decision." *Plumb v. State*, 809 P.2d 734, 743 (Utah 1990). "To be sufficient, the notice must advise the parties of the specific issues which they must prepare to meet. Thus, the party must be given a 'reasonable opportunity to know the claims of the opposing party and to meet them.' " *W. & G. Co. v. Redevelopment Agency*, 802 P.2d 755, 761 (Utah Ct.App. 1990) (citations omitted); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (holding "notice must be of such nature as reasonably to convey the required information" and "must afford a reasonable time for those interested to make their appearance"). " ' "[W]here notice is ambiguous or inadequate to inform a party of the nature of the proceedings against him [or her] or not given sufficiently in advance of the proceeding to permit preparation, a party is deprived of due process." ' " *Plumb*, 809 P.2d at 743 (quoting *Cornish Town v. Koller*, 798 P.2d 753, 756 (Utah 1990) (citation omitted)).

■ In this case, the written notice contained in the court's February 1997 order stated that the court would "establish a permanency plan for the children" at the June dispositional review hearing. This notice was neither ambiguous nor "inadequate to inform" D.M. that a permanency plan would be addressed by the court at the June hearing. Moreover, a copy of the order was sent to D.M. sufficiently ahead of the proceeding—four months—to provide her with a reasonable time to prepare for the possibility that the State would request a permanency plan giving DCFS and the father permanent custody of the children.

■ Additionally, D.M. had statutory notice that her failure to comply with the service plan could jeopardize her future rights to her children. *See* Utah Code Ann. § 78–3a–312 (1996) (stating failure to comply with plan is "prima facie evidence that return of the child to the parent would be detrimental"); *State ex rel. G.D. v. L.D.*, 894 P.2d 1278, 1282 (Utah Ct.App.1995) (discussing court-ordered service plans in context of Termination of Parental Rights Act, Utah Code Ann. §§ 78–3a–403, –408 (Supp.1994)). In *G.D.*, this court stated that "[i]f a parent fails to comply substantially with a mutually agreed upon plan to reunite the child with the parent, that noncompliance is evidence of 'failure of parental adjustment,' " a ground for terminating the parent's parental rights. *Id.* at 1282 (citing Utah Code Ann. §§ 78–3a–403(3), –408(3)(Supp.1994) (footnote omitted)). In addition, we noted that under the Termination of Parental Rights Act,

the agreed plan between parents and [DCFS] is meant to be taken very seriously. Not only is a failure to substantially comply with the plan evidence of one of the grounds for termination of parental rights, but the definition of the plan itself indicates that *one of the objectives of the plan can be to free the child for adoption if the parent refuses or neglects to comply.*

*Id.* (citation omitted & emphasis added). Thus, upon court approval of the plan, a parent is put on notice that custody may be permanently lost if the parent does not substantially comply with the plan.

In addition, D.M. is deemed to have statutory notice that the court had a number of placement options available to it at the dispositional review hearing. *See* Utah Code Ann. § 78–3a–312(3)(c) (1996) (providing court may enter order in child's best interest); *cf. Beltran v. Allan,* 926 P.2d 892, 898 (Utah Ct.App.1996) (stating putative father deemed to have notice of statutory provisions).

Accordingly, we conclude that D.M. was provided adequate notice that the court would adopt a permanency plan for the children at the June 1997 hearing. She also was on notice that, given her failure to complete the court-ordered treatment plan, the permanency goal would likely be to deprive D.M. of custody of her children, i.e., that the children's then-custodians, DCFS and the natural father, would be awarded custody in order to provide stability and permanence for the children. As a result, D.M. was not deprived of her due process rights to adequate notice.

### *Permanency Plan Adoption*

D.M. also asserts that the statutory scheme governing these proceedings prohibits the court from adopting a permanency plan and awarding permanent custody at the dispositional review hearing.

■■■ "In interpreting a statute, we read it to harmonize it with its subsections." *A.E. v. Christean,* 938 P.2d at 816. "[I]f there is doubt or uncertainty as to the . . . application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose." *State v. Souza,* 846 P.2d 1313, 1317 (Utah Ct.App.1993) (internal quotations & citations omitted). Because we must determine whether the juvenile court impermissibly combined a dispositional review hearing with a permanency plan determination for D.M.'s

children, we set forth the language of the relevant statutory sections.

Section 78–3a–311 provides:

(1) The court may . . . place the child in the custody or guardianship of any individual or public or private entity or agency, order protective supervision, family preservation, medical or mental health treatment, or other services.

(2) (a) Except as provided in Subsection (3), whenever the court orders continued removal at the dispositional hearing, and that the minor remain in the custody of [DCFS], it shall order that the division make reasonable efforts to provide services to the minor and his parent for the purpose of facilitating reunification of the family, within a maximum time period not to exceed 12 months from the date that the child was initially removed from his home. . . .

. . . .

(c) At the expiration of the 12 month period described in Subsection (a), a dispositional review hearing shall be conducted by the court in accordance with Section 78–3a–312. *If at that time the child cannot be safely returned to the care and custody of his parent without court supervision, a permanency plan for the child shall be finalized* . . . .

. . . .

(3) Because of the state's interest in and responsibility to protect and *provide permanency* for children who are abused, neglected, or dependent, the Legislature finds that a parent's interest in receiving reunification services is limited. The court may, under any circumstances, determine that efforts to reunify a child with his family are not reasonable, based on the individual circumstances, and that reunification services need not be provided. . . .

. . . .

(4) (a) Failure of the parent to respond to previous services or comply with any previous treatment plan ... or testimony by a competent professional that the parent's behavior is unlikely to be successful, are relevant factors to consider in determining

whether reunification services should be ordered.

. . . .

(7) If . . . the court does not order reunification services, a hearing shall be conducted within 120 days for establishment of a permanency plan for the child, in accordance with Subsection 78–3a–312(3).

Utah Code Ann. § 78–3a–311 (1996) (emphasis added).

Section 78–3a–312 provides:

(1) A dispositional review hearing shall be held by the court no later than 12 months after the original removal of the child.

(2) (a) If reunification services were ordered by the court in accordance with Section 78–3a–311, the court shall order that the child be returned to the custody of his parent unless it finds, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to his physical or emotional well-being. *The failure of a parent or guardian to participate in, comply with, in whole or in part, or to meet the goals of a court approved treatment plan constitutes prima facie evidence that return of the child to that parent would be detrimental.*

. . . .

(3) If a child is not returned to his parent or guardian at the dispositional review hearing, the court *shall:*

(a) order the division to develop a permanent plan, and schedule a hearing *within 120 days* after the dispositional review hearing to make a final determination regarding whether termination of parental rights, adoption, guardianship, or long-term foster care is the most appropriate final plan for the child;

(b) order termination of reunification services to the parent; and

(c) *in its discretion, enter any other order that it determines to be in the best interest of the child.*

*Id.* § 78–3a–312 (emphasis added).

■ D.M. argues that our decision in *A.E. v. Christean* applies to this case and

prohibits combining the dispositional review hearing with the approval of a permanency plan or granting of permanent custody. In *A.E.,* the mother claimed the juvenile court erred in refusing to hold a dispositional review hearing separate from and prior to a trial on petitions to terminate parental rights. 938 P.2d at 813–14.

Although this court acknowledged that "enactment of and amendments to Utah's Child Welfare Act are intended to protect children and assure that they are not placed in a 'legal limbo' for an unwarranted time period," *id.* at 814 (citation omitted), we held that concern for the best interest of the child could not override the "well-established principle 'that "a parent has a fundamental right to maintain a relationship with his or her child." ' " *Id.* (citations omitted). Thus, judicial economy could not, by itself, "justify erosion of a parent's interest in being reunited with his or her child, where warranted." *Id.* Construing the language of section 78–3a–312, we determined that the term "shall" meant that a dispositional review hearing was mandatory and that it could not be combined with a termination of parental rights trial. *See id.* at 815–17. In doing so, we also noted that the "Juvenile Court Act establishes sequential steps which must be followed once a child is removed from a parent," and nothing in section 78–3a–312 provided for the combining of a dispositional review hearing and a termination proceeding. *Id.* at 816–17. We do not believe, however, that the Act similarly applies to prohibit the establishment of a permanency plan and award of permanent custody at the dispositional review hearing.

This court noted in *State ex rel. J.P.,* 921 P.2d 1012 (Utah Ct.App.1996),

In defining the purpose of [Utah's child welfare laws], the legislature provided: "In keeping with its ultimate goal and purpose of protecting children, . . . when . . . reasonable efforts to maintain or reunify a child with his family ha[ve] failed, [DCFS] shall act in a *timely fashion* . . . to provide the child with a stable, permanent environment." . . . Thus, the overriding policy concern is to achieve permanency for . . .

children, especially once a parent is determined unfit.

Given this goal of permanency, the provisions seem to contemplate one of two alternate routes—reunification or termination.

*Id.* at 1019–20 (emphasis added & citation omitted); *see also* Utah Code Ann. §§ 62A–4a–103(2)(b), –201(3) (1997) (stating DCFS shall "ensure that children are brought up in stable, permanent families"); *State ex rel. J.L.W.,* 900 P.2d 543, 549 n. 13 (Utah Ct.App. 1995) (noting "specific time lines [are] established [under Child Welfare Reform Act] to prevent a child from languishing indefinitely in foster care"). We read sections 78–3a–311 and 78–3a–312 to harmonize them with this established legislative intent.

Sections 311 and 312 indicate that the permanency plan for a child *may* be finalized at the time of the section 312 dispositional review hearing. *See* Utah Code Ann. § 78–3a–311(2)(c) (stating that if, *at the time of the 312 hearing,* "the child canno⁺ be safely returned to the care and custody of his parent without court supervision, a permanency plan for the child *shall be finalized."*(emphasis added)); *id.* § 78–3a–312(3)(c) (stating "in its discretion, [the court shall] enter any other order that it determines to be in the *best interest of the child."* (emphasis added)). In fact, there is clear authority in section 311 requiring that if twelve months have expired since the children were removed from the parent, a section 312 dispositional review hearing must be held and, if the children cannot be safely returned to the parent, "a permanency plan for the child shall be finalized" at that time. Utah Code Ann. § 78–3a–311(2)(c) (1996).

Although the section 312 requirement that a permanency plan hearing be held *within* 120 days of a dispositional review hearing is admittedly a "sequential step" established by the Legislature which cannot be ignored by the juvenile court, *see A.E.,* 938 P.2d at 816, we note that unlike a dispositional review hearing, which must be held within twelve months after a child is placed in DCFS custody, the permanency plan hearing required by section 312 need not occur at any established time so long as it occurs *no later than* 120 days from the date of the dispositional review hearing. Section 312(3) also allows the court to enter any other order "it determines to be in the best interest of the child." Utah Code Ann. § 78–3a–312(3)(c) (1996). Here, the court gave clear notice that a permanency plan would be adopted at the dispositional review hearing. Section 311 required the court to have such a plan in place by this time as the children had been removed from D.M. for more than twelve months. In this case, the permanency plan decision did occur "within 120 days," albeit on the same day as the 312 hearing. Continuing custody in DCFS and the father was consistent with the permanency plan the court adopted and would be subject to further review by the court. *See* Utah Code Ann. § 78–3a–313 (1996) (requiring court to review case at least every six months until jurisdiction over children is terminated).

Thus, based on the evidence presented, the trial court found that D.M. had failed to comply with the treatment plan, despite having had ample time to do so, and that the children could not be safely returned to her custody. The court consequently awarded permanent custody of the children to DCFS and A.M.'s natural father, finding such action to be in the children's best interest.

## CONCLUSION

We hold that D.M. received adequate notice that the juvenile court would establish a permanent placement plan for the children at the section 312 hearing. She also had statutory notice that the juvenile court could consider permanent placement at the section 312 hearing and based upon the service plan ordered by the court, she knew that failure to comply could result in the permanent loss of custody of her children. Thus, her right to due process was not violated. In addition, we hold that the juvenile court did not abuse its discretion in making the custody awards, nor did it err in ordering, at the section 312 hearing, a permanent placement of the children in DCFS's custody and, in A.M.'s case, with his natural father, thus fulfilling the

statutory intent of removing them from their uncertain "legal limbo."

The juvenile court's order is affirmed.

JACKSON and ORME, JJ., concur.