987 P.2d 616 (1999)
STATE of Utah, In the Interest of S.K. and M.K., persons under eighteen years of age.
State of Utah, Appellant,
v.
C.K., Appellee.
No. 981454-CA.
Court of Appeals of Utah.
September 16, 1999.
Jan Graham, Attorney General, and John Peterson, Attorney General's Office, Salt Lake City, for Appellant.
Ramona Mann and Candace S. Bridgess, Box Elder Public Defender, Ogden, for Appellee.
Martha Pierce and Taniela Fiefia, Salt Lake City, Guardians Ad Litem.
Before Judges BENCH, BILLINGS, and ORME.

OPINION
BILLINGS, Judge:
¶ 1 The Division of Child and Family Services (DCFS) appeals from a July 14, 1998, order of the Second District Juvenile Court that extended reunification services to C.K., the natural father of S.K. and M.K., for six months, pursuant to Utah Code Ann. § 78-3a-312 (Supp.1999).[1] Because the issue *617 raised is moot, we dismiss the appeal for lack of jurisdiction.[2]

BACKGROUND
¶ 2 C.K. (father) is the natural father of S.K., a female child born November 19, 1991, and M.K., a female child born December 23, 1993. On or about November 20, 1996, father consumed a large quantity of alcohol and a bottle of sleeping pills in an apparent suicide attempt. Father and the girls were found naked together. Father was taken to the hospital by police, while the girls were removed from the home and placed into protective custody by DCFS.[3]
¶ 3 DCFS filed a petition alleging neglect and dependency on November 25, 1996. That same date, the juvenile court convened a shelter hearing. Father admitted to the allegations contained in an amended petition. The court found the children dependent, placed temporary custody of the children with DCFS, and ordered the children sent to their paternal aunt, S.C. (aunt), in Wisconsin. While in the custody of their aunt, the children made allegations of sexual abuse against father.
¶ 4 Aunt subsequently became unable to care for the children. On November 7, 1997, the court ordered the children removed from the Aunt's physical custody and returned to Utah. The court returned the children to DCFS's custody to facilitate supervised visitation with father.
¶ 5 The court held the first in a series of disjointed permanency hearings on November 7, 1997. These hearings continued on December 12, 1997, March 6, April 22, and May 2, 1998. In those hearings, the court heard testimony, took evidence, and interviewed the children. Throughout the proceedings, both DCFS and the Guardian Ad Litem urged the court to change the children's permanency plan to adoption. The court held another final permanency hearing on May 22, 1998.
¶ 6 The juvenile court's Memorandum Decision was filed on July 14, 1998, over eight months after the permanency hearings began, and twenty-two months after the children's removal. The juvenile court found that father had sexually abused both of his children on numerous occasions. Moreover, the court found that father "has abnormal sexual responses to prepubescent children and pubescent children consistent with his alleged offense history." Also, the court found that father's claim that aunt had coached his children in an effort to keep custody of them was a figment of his imagination. Finally, the court found that father had been suicidal on more than one occasion. Based on these findings, the court concluded that "it had been proven by a preponderance of the evidence that it would create a substantial detrimental risk to said children's physical and emotional well being to return the children to the father at this time."
¶ 7 Despite this conclusion, the juvenile court ordered that reunification services should continue. The court ordered father to receive "sex specific counseling which will go in the direction of proving to the Court that the children will not be in danger from his actions and that he will be able to control not only his depressive tendencies but also his inappropriate sexual actions with said children." The court further determined that father "should be given the opportunity over the next six months to prove to the Court that he is capable of controlling his behaviors." It is from this order continuing reunification services that DCFS appeals.

ANALYSIS

I. MOOTNESS
¶ 8 We first address the threshold issue of whether DCFS's claims are moot. *618 As indicated above, DCFS appealed from the juvenile court's July 14, 1998, Memorandum Decision ordering that reunification services for father be continued for an additional six months. Our review of the record reveals that on January 5, 1999, DCFS petitioned the juvenile court to terminate father's parental rights. Further, on March 2, 1999, the juvenile court terminated reunification services. Thus, this case is technically moot because the juvenile court's termination of reunification services on March 2, 1999, rendered moot the July 14, 1998, order from which DCFS appeals.
¶ 9 Generally, this court declines to issue advisory opinions on moot issues. See, e.g., In re N.R., 967 P.2d 951, 952 (Utah Ct.App.1998); see also Strollo v. Strollo, 828 P.2d 532, 534 (Utah Ct.App.1992). However, we will consider technically moot issues if the case "presents an issue of public import that is likely to recur and is capable of evading judicial review." In re N.R., 967 P.2d at 953; see also Strollo, 828 P.2d at 533-34 (retaining jurisdiction on technically moot case because "the issue involves construction of a statute which courts must routinely apply, ... is an issue of wide and significant public concern, and ... is likely to recur and would likely escape judicial review"); Kehl v. Schwendiman, 735 P.2d 413, 415 (Utah Ct.App.1987) (retaining jurisdiction over technically moot issue "that affects the public interest, is likely to recur, and ... is capable of evading review").
¶ 10 Whether the court erred by failing to terminate reunification services after twelve months, as required by section 78-3a-312, when the court had concluded the children could not safely be returned to the parent is an important issue that is certain to come before our juvenile courts in the future. However, we think the issue is not one that "is capable of evading judicial review." In fact, this court can readily deal with this issue if and when DCFS files a petition for an extraordinary writ challenging the juvenile court's failure to follow the statute's clear mandate.
¶ 11 We may grant the extraordinary relief of a writ in the nature of mandamus, compelling the juvenile court's compliance, when the court has "(A) ... exceeded its jurisdiction or abused its discretion; (B) ... failed to perform an act required by law as a duty of office, trust or station; [or] (C) ... refused the petitioner the use or enjoyment of a right or office to which the petitioner is entitled." Utah R. Civ. P. 65B(d)(2).
¶ 12 Given the mandatory dictates of the permanency hearing statute,[4] coupled with the facts of this case, Rule 65(B) would have provided DCFS with exactly the type of relief it now seeks through an appeal as of right.[5] We have indicated our willingness to consider writ petitions arising from alleged abuses of discretion in the juvenile court. See, e.g., Newman v. Behrens, 980 P.2d 1191, 1194 (Utah Ct.App.1999) (parent-petitioner may petition for extraordinary writ provided petitioner provides court with evidence that she sought a stay of adoption proceedings in the juvenile court); A.E. v. Christean, 938 *619 P.2d 811 (Utah Ct.App.1997) (granting parent's petition seeking extraordinary writ and concluding that dispositional review hearing is mandatory).
¶ 13 Moreover, an extraordinary writ is appropriate in light of Utah's Child Welfare Act, as it would have expedited the decision making process, an especially acute concern in the child welfare context. See In re J.N., 960 P.2d at 407-08; see also A.E., 938 P.2d at 814; In re J.L.W., 900 P.2d 543, 549 n. 13 (Utah Ct.App.1995).
¶ 14 Accordingly, we conclude DCFS's claims are moot, and, as such, we dismiss its appeal.
¶ 15 WE CONCUR: RUSSELL W. BENCH, Judge, and GREGORY K. ORME, Judge.
NOTES
[1] Because the court's order was entered after July 1, 1998, the 1998 amendments to the statute were in effect. See Utah Code Ann. § 78-3a-312 (Supp.1999). Further, and "[f]or clarification, we note that what are now called `permanency hearings,' see, e.g., Utah Code Ann. § 78-3a-312 (Supp.1997), used to be called `dispositional review hearings,' see, e.g., id. § 78-3a-312 (Supp. 1995). We refer to them throughout this opinion as permanency hearings." In re J.N., 960 P.2d 403, 405 n. 1 (Utah Ct.App.1998).
[2] We note that because we dismiss this appeal as moot, we do not reach the issue of whether we also lack jurisdiction because there is no final appealable order.
[3] Father had returned to the United States from Korea about two weeks prior to this event. The children's natural mother, O.K., is a Korean citizen and resident who is divorced from father. It appears that father was granted custody of the children upon the parents' divorce.
[4] Utah Code section 78-3a-312, the statute governing permanency hearings, requires the juvenile court to convene a permanency hearing within twelve months of a child's placement into foster care. See Utah Code Ann. § 78-3a-312(1)(a) (Supp.1999) ("A [permanency] hearing shall be held by the court no later than 12 months after the original removal of the child.").
[5] We have unequivocally held that the permanency hearing statute leaves a juvenile court judge with no discretion. See In re J.N., 960 P.2d at 407. The children's "legal limbo" comes to an end because the statute requires the juvenile court to make one of two choices:

First, the court could order that the child be returned to the parent. Alternatively, if the juvenile court finds that returning the child to the parent poses a substantial risk to the child's well being, and thus does not return the child to the parent, the permanency statute requires that the court make other orders. For example, the court must order both the termination of reunification services and the development and implementation of a permanent plan for the child. See [Utah Code Ann.] § 78-3a-312 (3)(a), (b) (Supp.1995); see also id. § 78-3a-311(2)(c) (providing that permanency plan for child "shall be finalized" if child cannot be safely returned to parent's care and custody after twelve-month period).
Id. at 408 (footnotes omitted).