2006 UT App 205

**STATE of Utah, in the interest of J.H., a person under eighteen years of age.**

**C.H., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20050759–CA.**

Court of Appeals of Utah.

May 25, 2006.

---

Don M. Torgerson and Samuel S. Bailey, Bailey & Torgerson PLLC, Price, for Appellant.

Mark L. Shurtleff, atty. gen., and John M. Peterson, asst. atty. gen., Salt Lake City, for Appellee.

Martha Pierce and Connie L. Mower, Salt Lake City, Guardians Ad Litem.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

ORME, Judge.

¶1 C.H. (Mother) appeals the juvenile court's order granting permanent custody of J.H. (Child) to Child's biological father (Father) and his wife (Stepmother). We reverse and remand for further proceedings.

## BACKGROUND

¶2 In October 2004, after over a year of providing Mother with court-ordered services—and after a great deal of noncompliance on Mother's part—the Division of Child and Family Services (DCFS) removed Child and Child's younger sibling (Brother) from Mother's care. At that time, DCFS placed Child with Father and Stepmother, the juvenile court set reunification as the primary permanency goal, and the court ordered DCFS to provide reunification services.

¶ 3 After a permanency hearing the following June, the court returned Brother to Mother's care, but continued protective supervision. As to Child, the court set the matter for review in six months, but did not alter her permanency goal, the provided reunification services, or her placement with Father and Stepmother.

¶ 4 In July 2005, DCFS submitted a motion to terminate DCFS custody of Child. Mother objected and requested a hearing prior to a permanency determination. In August—and without any further hearing—the juvenile court granted the motion to terminate DCFS custody and awarded permanent custody to Father and Stepmother, finding that reunification with Mother would cause a substantial risk of detriment to Child.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 5 Mother first argues that she was not provided with a permanency hearing before the court awarded custody of Child to Father and Stepmother. Whether the juvenile court's actions met the statutory requirements for a permanency hearing is a question of law that we review for correctness. See Gutierrez v. Medley, 972 P.2d 913, 914–15 (Utah 1998) ("The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion.").

¶ 6 Mother also argues that the juvenile court applied the wrong standard for deciding whether Child should be returned to Mother's custody. Because the standard used for making this determination is set forth in the permanency hearing statute, this argument, too, as an issue of statutory interpretation, is a question of law, reviewed for correctness. See id.

## ANALYSIS

### I. Permanency Hearing

■ ¶ 7 The Utah Code provides that if the juvenile court orders reunification services for a parent, a permanency hearing shall be held at the expiration of those services—no later than twelve months after the child was originally removed from the home. See Utah Code Ann. § 78–3a–311(2)(f)(i)—(ii) (Supp.2005). See also id. § 78–3a–312(1)(a) (Supp.2005). At the permanency hearing, the court "shall review and consider," among other things, "any evidence regarding the efforts or progress demonstrated by the parent," id. § 78–3a–312(3)(d), and "shall ... determine ... whether the minor may safely be returned to the custody of the minor's parent." Id. § 78–3a–312(2)(a). Because permanency hearings are designed to end the " 'legal limbo' " for the children concerned, the permanency hearing statute clearly requires that one of two actions be taken: either (1) the child will be ordered to be returned to the parent or (2) if the child is not to be returned, the court is required to order the termination of reunification services and set a final permanency plan for the child, i.e., adoption, termination of parental rights, or permanent custody or guardianship. See In re S.K., 1999 UT App 261, ¶ 12 n. 5, 987 P.2d 616 (citation omitted). See also Utah Code Ann. § 78–3a–312(4)(a)(i)—(ii).[1]

¶ 8 The State argues that the hearing held in June 2005 was a permanency hearing for both Brother and Child. We disagree. Although the juvenile court took appropriate action during the hearing to render it a permanency hearing for Brother—determining that he could safely be returned to Mother's custody—similar action was not taken in relation to Child. While Child was present at the June hearing and there was some discussion about her, a permanency hearing requires more—either a determination that Child could safely be returned to Mother's custody or an order terminating reunification services and setting a final permanency plan for Child. See In re S.K., 1999 UT App 261 at

---

1. There is a provision within the permanency statute that, under some narrow circumstances, allows the court to extend reunification services for up to ninety days if the court finds reunification is probable within that time. See Utah Code Ann. § 78–3a–312(4)(d) (Supp.2005). But neither this provision, nor the finding that reunification was probable within ninety days, was discussed by the juvenile court, and it is not at all apparent that this subsection was relied upon in the court's determination to continue reunification services for Mother and Child.

¶ 12 n. 5, 987 P.2d 616. The juvenile court took neither of these actions with respect to Child but instead simply continued reunification services for Mother and Child and maintained Child's temporary custody with Father and Stepmother. In speaking of Child, the juvenile court noted that this was a reunification case and "I think more time to have those services in place for [Mother and Child] to work on that relationship would be appropriate." In fact, the court correctly noted that the hearing "becomes a [permanency] hearing" if the court ends services and grants permanent custody to Father and Stepmother, which it declined to do at that time.

¶ 9 Thus, we believe that the June hearing was not intended to be a permanency hearing as to Child—and even if such a hearing was intended, it did not qualify as a permanency hearing because the juvenile court did not comply with the necessary statutory requirements. Therefore, as guarantied by statute, Mother is entitled to a permanency hearing with respect to Child and the opportunity to present evidence at such a hearing.[2]

¶ 10 Although we remand for the juvenile court to hold a proper permanency hearing with regard to Child, two additional matters raised by Mother require our attention as they will likely surface again on remand. *See, e.g., Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 22, 20 P.3d 388. Accordingly, we address Mother's contentions concerning the juvenile court's ability to permanently modify child custody when a district court retains continuing divorce jurisdiction and concerning the proper standard for determining whether a child can be safely returned to a parent once the child has been taken from a parent.

## II. Overlapping Custody Jurisdiction

¶ 11 This is a case of overlapping jurisdiction because the district court retains jurisdiction over the parents' divorce action. But we recognize that the juvenile court has power to enter decisions regarding the custody of Child notwithstanding any continuing jurisdiction the district court may retain. *See* Utah Code Ann. § 78–3a–105(4) (Supp. 2005). *See also id.* § 78–3a–118(2)(y) (Supp. 2005). Thus, contrary to Mother's argument, the juvenile court can modify custody and grant permanent custody to Father.[3]

## III. Safe–Return Inquiry

¶ 12 Mother additionally argues that the juvenile court applied the incorrect standard in determining whether Child could safely be returned to Mother's care. She argues that the permanency hearing statute requires that the court return custody of Child to Mother unless it finds "that returning [Child] would result in a substantial risk of detriment to [Child's] physical or emotional well-being." Mother attempts to support this claim by citing to *A.E. v. Christean,* 938 P.2d 811 (Utah Ct.App.1997). *A.E.,* however, refers to the 1996 version of the permanency hearing statute, *see id.* at 813, which has since been amended to set forth a somewhat different inquiry for the determination of whether a safe return is possible.[4]

---

2. The State also argues that the hearing was at least "substantially equivalent" to a permanency hearing for Child. But we fail to see how the juvenile court's action continuing custody and deferring further decision comports with the statutory requirements of permanency hearings, which are designed to end a child's " 'legal limbo.' " *In re S.K.,* 1999 UT App 261, ¶ 12 n. 5, 987 P.2d 616 (citation omitted). In fact, the actions here appear just the opposite. Further, there are "mandatory dictates" within the permanency hearing statute, *id.* at ¶ 12, as to what actions the court may take at a permanency hearing, and strict compliance with these requirements is necessary. *Cf. Mace v. Webb,* 614 P.2d 647, 649 (Utah 1980) (noting that a strictly statutory procedure "can be accomplished only by strict compliance with [relevant] statutes").

3. Mother specifically relies on a Utah Code provision stating that a district court's previous legal custody order is not affected by the juvenile court's custody order. *See* Utah Code Ann. § 78–3a–307(4) (Supp.2005). This statute, however, clearly specifies that the provision applies to the *temporary* custody order entered at a shelter hearing, *see id.,* which is not the type of custody order at issue in the instant case.

4. The previous version of the permanency hearing statute read, in relevant part, as follows:

If reunification services were ordered by the court …, the court shall order that the child be returned to the custody of his parent unless it finds, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to his physical or emo-

¶ 13 The current permanency statute specifies that the court shall determine "whether the minor may safely be returned to the custody of the minor's parent." Utah Code Ann. § 78–3a–312(2)(a) (Supp.2005). The statute then further instructs that "[i]f the court finds, by a preponderance of the evidence, that return of the minor would create a substantial risk of detriment to the minor's physical or emotional well-being, the minor may not be returned to the custody of the minor's parent." *Id.* § 78–3a–312(2)(b). This latter determination is not simply a restatement of the first inquiry, but rather is a subpart of the inquiry. Thus, the overarching question to be addressed during the hearing is whether the child may be safely returned to the parent. And the first step to be performed within this determination is to decide whether return would "create a substantial risk of detriment" to the child's well-being. *Id.* If returning the child poses such a risk, the child *"may not* be returned," the inquiry regarding safety ends, and the juvenile court is forced to take other actions, i.e., abandoning reunification efforts and steering the case in a different direction. *See id.* (emphasis added).

¶ 14 But a juvenile court's determination that return does *not* "create a substantial risk of detriment" to the child's well-being does not end the inquiry of whether the child may be safely returned. *Id.* The statute no longer states that return to the parent is then *required;* it simply makes the "substan-

tial risk" subsection inapplicable, leaving open the broad question of whether the minor may safely be returned to the parent's custody.[5] The juvenile court must then determine the safety question, looking at what is in the best interests of the child—an inquiry underlying all actions of the juvenile court. *See* Utah Code Ann. § 78–3a–102(5)(g) (Supp.2005) (stating that the purpose of the juvenile court is to "act in the best interests of the minor in all cases and preserve and strengthen family ties").[6] Indeed, the permanency hearing statute itself specifically states that the court may "enter any additional order that it determines to be in the best interest of the minor." *Id.* § 78–3a–312(4)(f). Thus, considering Child's best interests during the safe-return determination is entirely appropriate.

## CONCLUSION

¶ 15 We conclude that the June 2005 hearing did not qualify as a permanency hearing as to Child. Thus, the juvenile court must provide Mother with such a hearing. We further conclude that on remand, the juvenile court may enter a permanent custody order after such a hearing, notwithstanding the continuing jurisdiction of the district court. In addition, the juvenile court may correctly consider Child's best interests in making its determination regarding whether Child can be safely returned to Mother. Accordingly,

tional well-being. The failure of a parent or guardian to participate in, comply with, in whole or in part, or to meet the goals of a court approved treatment plan constitutes prima facie evidence that return of the child to that parent would be detrimental.
Utah Code Ann. § 78–3a–312(2)(a) (1996). The Legislature amended the statute in 1997. *See id.* § 78–3a–312 amendment notes (Supp.1997). And the current version, by which the instant case is governed, has undergone only minor revisions since then. *See id.* § 78–3a–312 amendment notes (Supp.2005).

5. Of course, especially when the child is placed with a non-parent, compliance with the service plan and elimination of a "substantial risk of detriment" to the child, Utah Code Ann. § 78–3a–312(2)(b) (Supp.2005), will often result in the child's return to the parent because at this stage of juvenile court proceedings there is a strong focus on "strengthening and preserving the fami-

ly." *In re S.L.,* 1999 UT App 390, ¶ 46, 995 P.2d 17, *cert. denied,* 4 P.3d 1289 (Utah 2000). However, in a case such as this, where the child is instead placed with a noncustodial parent, the child's return to the other parent may be less urgent because either outcome may further the goal of preserving the family.

6. It seems highly appropriate that our analysis here is similar to that which would occur within the district court were Father to petition for a change of custody from that spelled out in the divorce decree. The reasons underlying DCFS intervention and removal of Child would likely qualify as "a substantial and material change in circumstances," *Hogge v. Hogge,* 649 P.2d 51, 54 (Utah 1982), and thus allow the district court to reevaluate a previous custody determination. In its evaluation, the district court would, of course, look at the best interests of Child to determine an appropriate custody order. *See id.;* Utah Code Ann. § 30–3–10(1)(a) (Supp.2005).

we reverse the order of the juvenile court and remand for further proceedings consistent with this opinion.[7]

¶16 WE CONCUR: JUDITH M. BILLINGS, Judge and JAMES Z. DAVIS, Judge.

---

7. In so doing, we by no means intimate that the juvenile court's ultimate decision with regard to Child's custody was inappropriate. We certainly do not imply, by our reversal, that Mother should be granted custody of Child, but rather we only determine that Mother is entitled to a hearing and an appropriate evaluation of whether Child may safely be returned to her custody.