*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2014 UT 26**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

THE STATE OF UTAH, in the interest of M.H., M.H. and D.H.,
persons under eighteen years of age.

D.H.,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20120213
Filed June 27, 2014

Third District Juvenile, Tooele Dep't
The Honorable Mark W. May
No. 1060238

Attorneys:
Mark W. Wiser, Scott B. Wiser, Salt Lake City, for appellant

Sean D. Reyes, Att'y Gen., John M. Peterson, Asst. Att'y Gen.,
Salt Lake City, for appellee

Martha M. Pierce, Salt Lake City, for minors M.H. and D.H.

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and
JUSTICE PARRISH joined.

ASSOCIATE CHIEF JUSTICE NEHRING filed a concurring opinion.

JUSTICE LEE, opinion of the Court:

¶1    This is an appeal from a juvenile court order adjudicating
the children of appellant D.H. "abused" and "neglected" under
Utah Code section 78A-6-105 (2008), and prohibiting any further
contact between D.H. and his children. D.H.'s appeal is premised
on a challenge to the juvenile court's denial of a request for addi-
tional time to allow D.H.'s expert to conduct a pre-trial investiga-
tion. While recognizing the potential value of such an investiga-
tion, the juvenile court denied that request on the ground that the

governing statute required a final adjudication hearing in cases like this one within sixty days of the filing of a petition. *See* UTAH CODE § 78A-6-309(2).

¶2　We reverse and remand. Because the parties had jointly stipulated to an extension of the sixty-day period set forth by statute, D.H.'s request for additional time to conduct an investigation should not have been denied on the ground that the statutory deadline had passed. Instead the juvenile court should have exercised its discretion to decide whether further discovery was justified under the circumstances of the case. We reverse on that basis. And we remand to allow the juvenile court to determine the terms and conditions of additional time for pretrial investigation by D.H.'s expert and to hold a new final adjudication hearing in light of the results of that investigation.

I

¶3　D.H. and K.H. had been married for about ten years when they divorced in 2010. They had three children, M.H., Mw.H., and Dn.H. Under their divorce decree, K.H. (the mother) was awarded sole custody, with D.H. (the father) retaining rights to visitation, or statutory "parent-time."

¶4　In or about April 2011, K.H. began to refuse to make the children available to D.H. for parent-time. She did so based on her claim that her son, M.H., then five years old, had told her that his father had let M.H. look at "naked magazines" and had threatened violence if M.H. told his mother about it. K.H. responded by reporting the incident to the Division of Child and Family Services (DCFS) and by requesting therapy through Valley Mental Health.

¶5　DCFS investigated K.H.'s complaint but ultimately dismissed it as insufficiently supported. In May 2011, however, M.H. began to see a therapist with Valley Mental Health. Later, in September 2011, M.H. allegedly told the therapist that his father had made M.H. touch his father's penis, that his father then touched his penis, that his father had put his finger in M.H.'s anus, and that his father had made M.H. lick his father's penis. M.H. made the same charges in a recorded interview at the Tooele County Children's Justice Center.

¶6　In light of these allegations, the State filed a juvenile court petition under Utah Code section 78A-6-304, seeking an adjudica-

tion that D.H. had abused and neglected M.H., Mw.H., and Dn.H, under Utah Code section 78A-6-105 (2008).[1] The petition was filed on November 14, 2011. Under Utah Code section 78A-6-309(2), the State's petition triggered a requirement of a hearing within "60 calendar days" of the "filing of the petition."[2]

¶7   At pretrial conference on November 17, 2011, the juvenile court entered an order suspending D.H.'s parent-time with M.H., restricting D.H. to supervised visits with his other children, and directing that the children remain in the custody of K.H. during the pendency of the proceedings. At that same hearing, D.H. asserted a right to "have his own individual therapist . . . talk to the children," and to have an expert conduct an "independent evaluation" in preparation for trial on the State's petition. The juvenile court agreed, indicating that DCFS could supervise the evaluation process using its "best judgment."

¶8   D.H. also requested an order that K.H. be required to "cooperate with making the children available" to meet with D.H.'s expert. The court agreed, while cautioning that the children should not be subjected to an excessive number of meetings with the expert. And the court also ordered that the children be required to meet with an expert of D.H.'s choosing, although for some reason that requirement did not appear in the court's minute entry or in any written order.

¶9   Despite the court's orders, K.H. refused to cooperate with D.H.'s attempts to have his expert meet with the children. On two separate occasions, K.H. declined to make the children available for scheduled appointments with D.H.'s expert. D.H. responded by filing a motion for an order to show cause.

¶10   The juvenile court heard argument on this motion at a pretrial conference on December 15, 2011. At that hearing K.H. conceded that she had failed to make her children available for ap-

---

[1] Section 78A-6-105 has been amended and renumbered three times since the 2008 version, in 2011, 2012, and 2014. All citations to section 78A-6-105 in this opinion refer to the 2008 version of the statute.

[2] Technically, the statute requires a final adjudication hearing within sixty days of *the later of* the date of a "shelter hearing" *or* "the filing of the petition." UTAH CODE § 78A-6-309(2).

pointments with D.H.'s expert. But she claimed that she had done so on advice of counsel—a new attorney who had not been present at the November 17 pretrial hearing, and who apparently had based his advice on the lack of a written order or minute entry reflecting a requirement that she make the children available for consultation with D.H.'s expert. The juvenile court then confirmed—and the parties apparently agreed—that such an order had in fact been issued orally by the judge at the November 17 hearing. Because the order had not been reflected in writing, however, the court declined to find K.H. in contempt, and instead proceeded to clarify her obligations going forward.

¶11 Specifically, the court ordered K.H. to make M.H. and Mw.H. available for one meeting with D.H.'s expert some time before January 5, 2012. When D.H. objected, insisting that a single visit would not be enough, the court responded by requiring that D.H.'s expert submit a letter by the next hearing (on January 5, 2012) setting forth the "protocol and procedure" for any additional visits that he requested and specifying the time needed for any such visits.

¶12 D.H. then raised a concern regarding the impending sixty-day statutory deadline for a hearing on the State's petition—a deadline that would require a hearing on or before January 13, 2012. Given that expert discovery had been stalled by K.H. from the time of the filing of the petition on November 14 through the date of the pretrial hearing on December 15, and in light of the additional difficulty presented by the impending holiday season, D.H. requested an extension of the statutory deadline, emphasizing the need for additional time for his expert to meet with M.H.

¶13 The court acknowledged D.H.'s motion to "waive" his statutory right to a trial within sixty days to allow for additional time for D.H.'s expert to meet with M.H. prior to trial. The court then turned to counsel for K.H., counsel for the State, and counsel for the children (an attorney from the Guardian ad Litem's office) and asked whether they had any objection. All parties stipulated to waiver of the statutory deadline and to an extension of the trial date.

¶14 The initial court-ordered meeting of D.H.'s expert with M.H. took place on December 28, 2011. According to the expert, he had a difficult time during this visit getting direct answers to

his questions from M.H. because his older brother Mw.H. was present and dominated the conversation "even when M.H. was asked to respond." The expert also indicated a concern, based on M.H.'s responses and body language, that "it seemed clear he was being led [by Mw.H.] to say things." In light of these concerns, the expert indicated that he needed additional time with M.H. to prepare to testify at trial, while also representing that his holiday schedule had not allowed time to prepare a formal letter to the court as requested.

¶15 The parties next appeared in the juvenile court for another pretrial hearing on January 5, 2012. At that hearing D.H. formally requested additional time for expert discovery and trial preparation. The court denied the request. Despite the parties' prior stipulation to waive the sixty-day statutory deadline for a hearing, the court denied the request for additional time on the basis of the impending deadline. It emphasized that "the statute says we have to try these cases within 60 days," and set a trial date on the basis of the "legislative decision" to establish a "deadline" advancing the interest of expedited resolution. In so doing, the court acknowledged the value of further discovery, but concluded that the legislature had indicated that it did not "want these issues to linger," but "want[ed] [the court] to make a decision based on the evidence that's there." The court entered a written order to the same effect, confirming the judge's view that although all parties "might benefit from more time to prepare for trial," the "Legislature has had to take into account and balance the interests of all parties," and has "set a 60 day time limit on juvenile court adjudications."

¶16 At that point D.H. raised a constitutional objection to the sixty-day deadline prescribed by statute, challenging the provision both generally and as applied here. The court responded by indicating that he would allow the parties to present further argument on the question whether the sixty-day deadline was constitutional as a matter of due process. It also set the case for a two-day bench trial on February 6 and 7, 2012.

¶17 The court denied D.H.'s constitutional challenge on February 2, 2012, concluding that D.H. had been afforded sufficient due process and that the children's interest "in seeing that juvenile court proceedings do not linger" outweighed D.H.'s interest in preparing his defense. The parties then proceeded to the bench

trial on February 6 and 7, 2012, where D.H.'s counsel in opening renewed his assertion that his client's "due process rights ha[d] been prejudiced because of his almost no time to prepare adequately for trial."

¶18  At trial D.H.'s expert testified concerning his one meeting with M.H. and Mw.H. He opined that although the court had not allowed him enough time to properly evaluate M.H. and Mw.H., M.H.'s behavior and statements during their interaction indicated that K.H. had asked M.H. to keep some sort of secret from him. What that secret was he did not know, but the expert testified it was important to find out. He also noted that during his interaction with M.H., Mw.H. attempted to dominate the conversation and answer questions on M.H.'s behalf. The expert declined to give an opinion as to the abuse allegations, however, stating only that he would need more time for such a determination.

¶19  The State, the Guardian ad Litem, and counsel for K.H. objected to the expert's qualifications, in part because he had spent so little time with the children. The court overruled the objections, concluding that the objections affected only the weight to be given to the expert's testimony. On cross-examination, the State questioned the expert at length, challenging his ability to reach any reliable conclusions after only a single two-hour visit with the children, and highlighting the fact that he had never visited with M.H. alone.

¶20  At the close of the evidence, the juvenile court determined that D.H. had sexually abused and neglected M.H under Utah Code sections 78A-6-105(1), (19), (23), (25)(a)(ii), and (35), and neglected Mw.H. and Dn.H. under section 78A-6-105(25)(a)(iv). In so doing, the court rejected D.H.'s expert's opinions as "sweeping conclusions [based on] limited evidence." The court ordered that custody and guardianship of all three children be with K.H., terminated all reunification services for D.H., and prohibited D.H. from having any contact with M.H. and Mw.H.[3]

---

[3] The court allowed D.H. to have professionally supervised visits with Dn.H., but only up to two hours twice a month, and at D.H.'s expense.

¶21 D.H. filed this appeal, which was certified to us by the court of appeals. We review the matter on standards of review articulated in the body of the opinion below.

II

¶22 D.H.'s appeal challenges the juvenile court's decision on due process grounds. Echoing part of the constitutional challenge he raised in the juvenile court, D.H. asserts that the sixty-day deadline prescribed by statute was constitutionally suspect as applied to the circumstances of this case. Citing *Mathews v. Eldridge*, 424 U.S. 319 (1976), D.H. asserts that constitutional principles of due process should have required a further extension of the statutory deadline for the hearing in this case to allow his expert an opportunity for further discovery and trial preparation. He argues, specifically, that his parental interests are paramount, that the government's interest in opposing an extension was minimal, and that there was a significant "risk of an erroneous deprivation" of his rights and a significant "value" in a further extension. *Id.* at 334–35 (identifying the factors to be balanced in a procedural due process analysis). And because the district court denied his request for a further extension, D.H. asserts that his due process rights were denied by the juvenile court's decision.

¶23 We reverse, but without reaching the constitutional question presented by D.H. First, because all parties stipulated to extension of the sixty-day deadline prescribed by statute, we conclude that the statutory deadline was off the table, and that the question presented was one to be decided by the juvenile court judge as a matter of discretion. Second, we conclude that for that reason the constitutionality of the sixty-day deadline was not properly presented to the juvenile court and should not have been addressed. And finally, we hold that D.H.'s request for more time for expert discovery and trial preparation should have been granted based on a balance of the relevant interests of all parties.

A

¶24 The threshold decision of the juvenile court was the determination (on December 15, 2011) to accept the parties' stipulation to waive the sixty-day deadline prescribed by statute. All parties expressly agreed to that extension in the juvenile court. And no one has challenged it on appeal.

¶25 In light of the stipulated, unchallenged waiver of the statutory timeframe, the juvenile court should have deemed the sixty-day deadline to be off the table. And the judge should thereafter have proceeded to decide pretrial scheduling questions as matters committed to his sound discretion. *See Gardner v. Bd. of Cnty. Comm'rs*, 2008 UT 6, ¶ 51, 178 P.3d 893 (trial courts have broad discretion in matters of discovery); *DeBry v. Cascade Enters.*, 879 P.2d 1353, 1361 (Utah 1994) (pretrial scheduling and case management are matters for the trial court's discretion).

¶26 The juvenile court judge erred in treating the statutory deadline as somehow still controlling. In denying D.H.'s motion for additional time for expert discovery and trial preparation, the judge reverted back to the statutory deadline—asserting that "the statute says we have to try these cases within 60 days," and setting a trial date on the basis of the "legislative decision" to establish a "deadline" for trials in cases such as this one. That was error, as the "legislative decision" had been waived by joint stipulation of all parties. And the error was highlighted, moreover, in the judge's written order, which coupled a concession that the parties "might benefit from more time to prepare for trial" with the reminder that the "Legislature has had to take into account and balance the interests of all parties" and has "set a 60 day time limit on juvenile court adjudications."

¶27 This was error. Because the parties stipulated to waive the statutory deadline, the legislative directive of a final resolution at the end of sixty days was no longer in effect. And with the statutory timeframe off the table, the juvenile court should have exercised its discretion to decide whether to allow D.H. additional time for expert discovery. No such discretion was exercised. To the contrary, the court acknowledged the possible value of granting further time for trial preparation, but deemed himself bound by a statutory deadline that had previously been waived by joint stipulation of all parties.[4]

---

[4] The decision to reverse on this basis stems from a straightforward assessment of the procedural history of the case—of the fact that the parties and the court had unquestionably extended beyond the sixty-day deadline prescribed by statute. That procedural fact, in turn, dictates the conclusion that the juvenile court judge was mistaken in basing a refusal to allow further pretrial

¶28 We reverse on that basis. Because the parties had jointly stipulated to waive the statutory deadline, the court should have proceeded to exercise its discretion. Its failure to do so was a threshold, reversible error.

¶29 In so concluding, we respectfully disagree with the contrary views advanced by Justice Nehring in his concurrence, which concludes that the statutory deadline could not be waived because "the parties and the court" had not "strictly compl[ied]" with our Rules of Juvenile Procedure. *Infra* ¶¶ 41–53.

¶30 The concerns raised in the concurrence are not properly before us, as no party has questioned the validity of the stipulated waiver of the statutory deadline—not on the grounds articulated in the concurrence or on any other basis. The parties' failure to raise this issue is reason alone not to address it. A matter unpreserved is a matter not properly presented, and our decision can be sustained on that basis alone.

¶31 Rule 54 of the juvenile rules is not properly implicated. The rule was certainly cited in the juvenile court and on appeal, *see infra* ¶¶ 43 & 55, but not to raise the point pressed by the concurrence. Thus, at no point in these proceedings has the Guardian ad Litem or any other counsel or party ever challenged the viability of the stipulated waiver of the statutory deadline on the basis of a lack of findings under rule 54. And even if they had, that rule would hardly establish a basis for reversal given that (a) there was no error under rule 54(c) because the rule includes an escape

---

preparation on *the very deadline that had already been overridden*. And the procedural history of a case is not a legal "theory" that must be argued by the parties in order to be "preserved." *See infra* ¶ 55 (suggesting that waiver of the statutory deadline is a matter that was "unpreserved"). It is simply an element of the context in which we review the decisions that come before us on appeal.

Thus, if a lower-court decision is made on the basis of a mistaken procedural premise rendering its analysis advisory, an appellate court cannot be required to ignore the procedural history of the case and to proceed on the basis of the same mistaken understanding. Instead, we must review the lower court decision in accordance with an accurate view of the procedural history of the case. That is the basis of the approach we take here.

clause ("unavoidable circumstances," UTAH R. JUV. P. 54(c)) that could easily encompass a joint stipulation of all parties in a case where the accused father has no access to the children and the mother has inexcusably interfered with the father's expert's trial preparation; (b) there was no error under rule 54(d) because the parties' joint stipulation could easily qualify as the practical equivalent of a "written finding by the court," UTAH R. JUV. P. 54(d)[5]; and (c) in any event, any arguable error was harmless in light of the joint stipulation of all parties through their counsel.[6]

---

[5] *Office of the Guardian ad Litem ex rel. S.C. v. Anderson*, 1999 UT App 251, 987 P.2d 611, is distinguishable on that basis. In *S.C.*, the Guardian ad Litem attorney expressly *objected* to the requested extension and asserted that "it would not be in the best interests of the children" to go beyond the statutory deadline. *Id.* ¶ 17 (emphasis omitted). The *S.C.* court's requirement of explicit findings makes sense in that context. But that requirement does not extend to a case like this one, where counsel for the children made a stipulation that served as an adequate substitute for findings.

[6] To assess whether any arguable error by the juvenile court under rule 54 would justify reversal (and thus reinstatement of the statutory deadline), we would determine whether an express consideration of the standards of rule 54 would be satisfied if the court had considered them explicitly. We have little doubt on that score. The express stipulation to waiver of the statutory deadline by the attorney from the Guardian ad Litem's office (counsel for the children) easily establishes that the continuance would not "adversely affect the interest of the child[ren]" as required by rule 54(c). And in any event, that point is hammered home by the undisputed fact that D.H.'s parent-time had been suspended and K.H. had sole custody of the children throughout the proceedings below. Moreover, the unusual circumstances of this case emphasize the "unavoidable circumstances" justifying continuance of the hearing beyond the "timeline[] established by statute," as also contemplated under rule 54(c). And finally, for all these reasons any technical deficiency in a failure to memorialize "written finding[s]" under rule 54(d) is likewise harmless. The record establishes ample grounds for a determination of the need for a continuance in this "sexual abuse case[] involving child victims." UTAH R. JUV. P. 54(d). In light of these points, we would not find re-

¶32 Granted, the governing statute speaks in mandatory terms. *See infra* ¶ 45 & n.16 (noting that the term "shall" is "presumed mandatory"). But a broad range of constitutional and statutory rights and responsibilities are likewise framed in such terms. And we roundly treat them as subject to knowing and voluntary waiver. The constitutional right to a speedy trial is a prime example. Under the Sixth Amendment "the accused *shall* enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI (emphasis added). That right is mandatory, but nonetheless subject to waiver,[7] as are most all rights in our legal system.[8] Thus, absent some clear statement in a statute, or some established caselaw deeming a deadline *jurisdictional*,[9] the settled presumption is that statutory deadlines are subject to waiver. We see no basis on the face of this statute to rebut that presumption, and accordingly deem it subject to waiver.

¶33 We accordingly reverse the juvenile court's threshold denial of D.H.'s request for additional expert discovery time on the basis of the statutory deadline under Utah Code section 78A-6-309(2). Because that deadline was waived by all parties and was accordingly off the table, the court should instead have exercised its discretion to determine the appropriateness of any further extension of the statutory deadline and to proceed to set a timely trial date.

---

versible (non-harmless) error even if the rule 54 issue had been preserved, and even if a technical violation of the rule had been established.

[7] *Barker v. Wingo*, 407 U.S. 514, 529 (1972) (recognizing that the Sixth Amendment right to a speedy trial is subject to waiver, and indicating that "waiver may be given effect under standard waiver doctrine" where "delay is attributable to the defendant").

[8] *See United States v. Mezzanatto*, 513 U.S. 196, 203 (1995) (noting and relying on the "background presumption that legal rights generally . . . are subject to waiver by voluntary agreement of the parties").

[9] *See, e.g.*, *Bowles v. Russell*, 551 U.S. 205, 214 (2007) (appellant's failure to file his notice of appeal within time limitations deprived the court of appeals of jurisdiction and could not be excused by forfeiture or waiver).

B

¶34 The juvenile court's evaluation of the due process question was also improper. That question was not properly addressed and ruled upon below, and is thus not properly before us on appeal. Instead of evaluating the question whether D.H.'s due process rights were violated in the circumstances of this case, the juvenile court assessed a hypothetical question—"whether the Legislature provided the father with sufficient due process under the sixty day requirement." Yet that was not the issue before the court, as the "60-day requirement" had been waived by the parties' stipulation. So the juvenile court was not in a proper position to "find[] that Utah Code § 78A-6-319 provides sufficient due process," as it did in its order.

¶35 We accordingly vacate that portion of the juvenile court's order, as it was improperly advisory. And we likewise decline to reach it here, as a matter not properly presented below is not an appropriate matter for our attention on appeal.

C

¶36 The remaining question concerns the basis and scope of our remand to the juvenile court. Above we found error in the decision treating the sixty-day statutory deadline as foreclosing any further expert discovery and trial preparation. Here we proceed to the subsequent question whether the court's decision might nonetheless be sustained on an alternative ground—that a proper exercise of discretion would have led the court to the same decision.

¶37 In our view the answer is no. First, there was substantial upside in a further extension allowing D.H.'s expert additional time for discovery and trial preparation. D.H. had a lot riding on the proceeding—a determination that he sexually abused his child, a decision threatening his parent-time and, potentially, his fundamental right to have a say in the upbringing of his children. *See* UTAH CODE § 78A-6-117(2). And his expert was substantially unprepared to present effective testimony on his behalf, as counsel for the State emphasized and the juvenile court ultimately concluded.

¶38 Second, D.H.'s expert's lack of preparation was a direct result of K.H.'s indefensible (borderline contemptuous) interference with his attempts to pursue early pretrial discovery in initial scheduled visits. Absent such interference, there is every reason to

believe that D.H.'s expert would have been better prepared to testify at trial. And that interference is perhaps the reason that K.H.—and all parties—readily agreed to D.H.'s initial request for waiver of the statutory deadline. It is also a significant basis for a further extension, as the one visit that was allowed did not appear to have been enough given Mw.H.'s apparent interference with the expert's questioning of M.H.

¶39 Third, and for many of the same reasons, there were sufficient grounds to believe that further time for expert discovery and trial preparation might have made a difference to the outcome of the trial. It is worth reiterating that D.H.'s expert acknowledged the deficiency of his interactions with M.H. in the testimony he provided at trial, that counsel for the State jumped on that point in challenging his testimony on cross-examination and closing, and that the court itself seized on the problem in announcing its decision. The point is not to express confidence that further expert discovery will produce sufficient evidence to exonerate D.H. of the charges against him. We do not and cannot know that at this stage. But we can say that there was sufficient reason to justify further discovery and trial preparation at the time that D.H. requested it on January 5, 2012. And we reverse and remand on that basis.

¶40 Our remand leaves for the juvenile court the determination of the precise terms and conditions of further discovery and trial preparation, and of the time for a new trial on the merits, subject of course to the need to protect the interests of the children and to proceed to trial as expeditiously as possible. But we do direct that some further time for expert discovery and trial preparation is necessary, with a new trial to follow.

————————

ASSOCIATE CHIEF JUSTICE NEHRING, concurring:

¶41 I cannot agree with the majority's analysis that the statutory deadline contained in Utah Code section 78A-6-309(2) was waived; and thus I respectfully dissent and concur only in the result. I do not say that the statutory deadline can never be waived, but I would hold that waiver is only possible if the parties and the court strictly comply with the relevant Utah Rules of Juvenile Procedure. I would hold that no waiver of the mandatory statutory deadline occurred because the juvenile court did not

follow rule 54 of the Utah Rules of Juvenile Procedure, which describes the procedure for granting a continuance in a child welfare case. Moreover, the court did not actually accept any such waiver where it imposed the statutory deadline on D.H. before the sixty days were up.[1]

¶42 I believe that Utah Code section 78A-6-309(2)'s sixty-day deadline was in effect when the juvenile court imposed it upon D.H. The statute was not "off the table"[2] both because it was not properly waived and because in any event the court did not actually accept the purported waiver. This was made clear by the court's invocation of the sixty-day deadline at the hearing on January 5, 2012—after the purported waiver but before the deadline had yet passed.[3] Most importantly, I dissent because the majority's approach undermines both the Juvenile Court Act and the Utah Rules of Juvenile Procedure.

¶43 At a hearing on December 15, 2011, the juvenile court purported to allow D.H. to "waive" the statutory deadline contained in Utah Code section 78A-6-309(2). The following exchange took place:

---

[1] Though the juvenile court purported to accept a "waiver" of the statutory deadline on December 15, 2011, when the parties returned on January 5, the juvenile court denied D.H.'s request for more time, reasoning that "the statute doesn't give [D.H.] more time, the statute says we have to try these cases within 60 days." Based on the date the petition was filed, the sixty days had not yet passed—that would happen over a week later, on Friday, January 13, 2012.

[2] *Supra* ¶ 33.

[3] The fact that the court took up and addressed D.H.'s constitutional challenge to its ruling imposing the sixty-day deadline shows that the court itself recognized that the deadline had not in fact been waived. The court's imposition of the deadline on January 5 led directly to the court's decision to rule on D.H.'s constitutional challenge to the statute. Thus, I do not agree that the court merely "assessed a hypothetical question" and gave an "improperly advisory" opinion. *Supra* ¶¶ 34, 35. Instead, it is clear from the court's actions that there was, in fact, no waiver.

The Court: The statute says I have to—we should
have the trial within 60 days. The person
that would be prejudiced would, like
most—most prejudiced, would be your
client . . . and I take it that you're willing
to waive the 60-day time frame?

[D.H.'s
Counsel]: I am, under Rule 54(c) as well. And we
would ask that we have at least four
months before we have trial . . .

The Court: I'm not sure I'm willing to go that far.

The court then decided that "[d]ue to the holiday, I'm going to give some leniency here," and made discovery due on January 5, 2012. Later, the court set the pretrial hearing for January 5 as well, in order to allow time for discovery and, apparently, the Christmas holiday. The court then offhandedly remarked, sua sponte,

It should be noted in the order that the father is waiving his right to have a trial within 60 days. Okay. Is there any objection to that? With the 60 days?

The attorney for the State and the Guardian ad Litem both responded, "[n]o objection."

¶44 The purpose of the Juvenile Court Act and the juvenile courts themselves has long been to protect children's welfare and act in the interest of children.[4] Juvenile courts work in two primary areas: juvenile delinquency and child protection.[5] In 1966, this court stated that the purpose of the "newly enacted Juvenile Court Act" was to "act in the interest of Children in various kinds of troubled circumstances . . . because of the public interest

---

[4] *See* 1905 Utah Laws 182 (codified at UTAH REV. STAT. § 16-9-720x to 720x22 (1907)); UTAH CODE § 55-10-1 (1953); *id.* § 78-3a-1 (1977); *id.* § 78-3a-1 (1992); *id.* § 78A-6-102(5)(e), (g) (2013).

[5] In the early versions of the Act the purpose was twofold: to serve both the "[child's] welfare" and "the best interests of the state." 1965 Utah Laws 595 (codified at UTAH CODE § 55-10-63 (Supp. 1965)); UTAH CODE § 78-3a-1 (1977).

in their welfare."[6] By 1988, the Act had been reworded to state that the purpose of the juvenile courts was to "strive to act in the *best interests of the children* in all cases."[7] The "best interests of the children" remains the guiding principle in juvenile court proceedings today.[8] Our case law, court rules, and statutes in this area are generally organized to achieve this worthy goal. The Juvenile Court Act and the Utah Rules of Juvenile Procedure are also designed to ensure that proceedings involving children are done expeditiously so that children do not languish in "legal limbo."[9] The legislature has "determined that the best interests of children and families in abuse, neglect, and dependency cases are served when judges follow strict time limits."[10] Indeed, the policy "underlying" the Child Welfare Reform Act is "one of swift permanency."[11] And "[t]he only way to accomplish this goal is for courts to adhere to the time restrictions imposed by law."[12]

¶45 Part three of the Juvenile Court Act governs abuse, neglect, and dependency proceedings, and thus governs this child

---

[6] *Anderson v. Anderson*, 416 P.2d 308, 309–10 (Utah 1966).

[7] 1988 Utah Laws 322 (emphasis added) (codified at UTAH CODE § 78-3a-1 (Supp. 1988)).

[8] UTAH CODE § 78A-6-102(5) (2013) ("The purpose of the court under this chapter is to : . . . (g) consistent with the ends of justice, act in the best interests of the minor in all cases and preserve and strengthen family ties.").

[9] *Office of the Guardian ad Litem ex rel. S.M. v. H.M.*, 2007 UT 21, ¶ 50, 154 P.3d 835 (quoting *C.H. v. State ex rel. J.H.*, 2006 UT App 205, ¶ 7, 138 P.3d 70); *C.M.F v. State ex rel. A.F.*, 2007 UT 69, ¶ 5, 167 P.3d 1070; *see also State ex rel. J.H.*, 2006 UT App 205, ¶ 9 n.2 ("[R]equirements of [the child welfare statutes] . . . are designed to end a child's legal limbo. . . . Further, there are mandatory dictates within the [child welfare] statute as to what actions the court may take . . . and strict compliance with these requirements is necessary." (internal quotation marks omitted)).

[10] *Office of the Guardian ad Litem ex rel. S.C. v. Anderson*, 1999 UT App 251, ¶ 15, 987 P.2d 611.

[11] *Id.* ¶ 13 (internal quotation marks omitted).

[12] *Id.*

abuse proceeding.[13] It contains various deadlines that apply in these proceedings.[14] One of those deadlines is contained in Utah Code section 78A-6-309, which provides a time limit for the final adjudication in a child abuse proceeding. The statute states simply that "the final adjudication hearing shall be held no later than 60 calendar days from the later of: (a) the date of the shelter hearing; or (b) the filing of the petition."[15] The language of this statutory deadline is mandatory. This is because the word "shall" is generally "presumed mandatory."[16] When interpreting a statute, we assume that terms are "used advisedly" and give them the "interpretation and application which is in accord with their usually accepted meanings."[17] We do this because "[o]nly by this construction is legislative intent followed to carry out the purposes of the statutes in a manner which is consistent with their language."[18] "[S]ince 'shall', a word with a usually accepted mandatory connotation," is used in Utah Code section 78A-6-309(2), it "must be interpreted strictly as [it is] plainly written."[19] The majority ignores the plain language of Utah Code section

---

[13] *See generally* UTAH CODE §§ 78A-6-301 to 78A-6-324.

[14] *See, e.g., id.* § 78A-6-309(2) ("[T]he final adjudication hearing shall be held no later than 60 calendar days from the later of: (a) the date of the shelter hearing; or (b) the filing of the petition."); *id.* § 78A-6-311(2) ("The dispositional hearing may be held on the same date as the adjudication hearing, but shall be held no later than 30 calendar days after the date of the adjudication hearing."); *id.* § 78A-6-313 ("If reunification efforts have been ordered by the court, a hearing shall be held no more than six months after initial removal of a minor from the minor's home . . . .").

[15] *Id.* § 78A-6-309(2).

[16] *Bd. of Educ. v. Salt Lake Cnty.*, 659 P.2d 1030, 1035 (Utah 1983); *accord S.C. v. Anderson*, 1999 UT App 251, ¶ 10; *A.E. v. Christean*, 938 P.2d 811, 815 (Utah Ct. App. 1997) *superseded by statute on other grounds*, UTAH CODE § 78-3a-312(6)(c) (2002), *as recognized in F.C. Jr. v. State ex rel. F.C. III*, 2003 UT App 397, ¶ 2 n.1, 81 P.3d 790.

[17] *Bd. of Educ.*, 659 P.2d at 1035.

[18] *Id.*

[19] *Id.*

78A-6-309 by concluding that where the parties merely agree to disregard the statutory deadline, it is "off the table."[20]

¶46 The Utah Rules of Juvenile Procedure govern all procedures in the juvenile court and are "intended to provide a just, speedy, and efficient determination" of those cases.[21] Rule 54 of the Utah Rules of Juvenile Procedure governs continuances in all child welfare proceedings. It states that in no event may a court grant a continuance "absent unavoidable circumstances . . . in any child protection case" if that continuance will "adversely affect the interest of the child or cause a hearing to be held later than child welfare timelines established by statute."[22]

¶47 Under this rule, Utah Code section 78A-6-309's sixty-day deadline can only be sidestepped if (1) there is a showing that the noncompliant continuance is required by "unavoidable circumstances," (2) there is a showing that the continuance will not "adversely affect the interest of the child," and (3) in a sexual abuse case, if the court makes a written finding or written minute entry that "include[s] the reason(s) for the continuance."[23]

¶48 In sum, when read together, Utah Code section 78A-6-309(2) and Utah Rule of Juvenile Procedure 54(c) and (d) mandate that the sixty-day time limitation for the final adjudication hearing in an abuse proceeding can be waived in a sexual abuse case only when the court makes a written finding containing a consideration of the best interests of the child and the existence of "unavoidable circumstances" that justify the continuance.[24] Yet the majority characterizes the court's failure to follow the dictates of the Rules of Juvenile Procedure as a "technical deficiency" and a "harmless" error.[25] Because the Rules of Juvenile Procedure are designed to protect the best interests of the children, "harmless

---

[20] *Supra* ¶ 33.

[21] UTAH R. JUV. P. 1 (a)–(b).

[22] *Id*. 54(c).

[23] *Id*. 54(c)–(d); *see also S.C. v. Anderson*, 1999 UT App 251, ¶ 16.

[24] UTAH R. JUV. P. 54(c); *see also S.C. v. Anderson*, 1999 UT App 251, ¶ 16.

[25] *Supra* ¶ 31 & n.6.

error" is not the appropriate standard to use. Even more strangely, the majority writes that the parties' oral agreement to ignore the statutory deadline "could easily qualify as the practical equivalent of a 'written finding by the court.'"[26] I fail to see how an oral agreement is "equivalent" to a written finding, as it lacks the most important element of a written finding—that of being *written*. Moreover, the rule does not allow for a written finding or its "practical equivalent." It requires a written finding and a consideration of the best interests of the child. Neither happened here.

¶49 The majority does away with rule 54(c)'s requirement that a continuance in a child welfare proceeding may only be granted only if the court considers the best interests of the children. According to the majority, if the Guardian ad Litem simply agrees to ignore mandatory statutory deadlines, this "easily establishes that the continuance would not 'adversely affect'" the children's interest.[27]

¶50 While the "role of the guardian ad litem is to represent the interests of the child,"[28] we have never said that the Guardian ad Litem's imprimatur is the final word on the child's best interests.[29] If that were so, the court would never be required to make a finding concerning a child's best interests—it would merely need to consult the Guardian ad Litem. This is of course not true.[30] The juvenile court's primary task is to ensure the best

---

[26] *Supra* ¶ 31.

[27] *Supra* ¶ 31 n.6.

[28] *M.W. v. A.N. (State ex rel. A.C.M.)*, 2009 UT 30, ¶ 20, 221 P.3d 185.

[29] *See generally Office of the Guardian ad Litem ex rel. S.M.*, 2007 UT 21 (upholding the juvenile court's decision to return mother's eleven children to her custody despite Guardian ad Litem's appeal of that order).

[30] *See, e.g., V.D. v. State ex rel. J.D.*, 2011 UT App 184, ¶ 24, 257 P.3d 1062 (emphasizing juvenile court's duty to make a *finding* concerning the children's best interest before terminating parental rights because "the legislature has deemed that 'the welfare and the best interest of the child [are] of paramount importance' . . .

interests of the child, which is why the court is regularly asked to make findings on that point. The Guardian ad Litem's judgment cannot stand in for the court's judgment. The juvenile court's very reason for being is to "act in the best interests of the minor in all cases."[31]

¶51 The majority's approach does a great disservice to the plain language of the statute and our Rules of Juvenile Procedure. Indeed, the majority's new rule renders meaningless Utah Rule of Juvenile Procedure 54's clear directives for granting continuances in child welfare cases—specifically, in situations where the attorney for the State, the Guardian ad Litem, and the attorney for the parent merely agree, without more, that they would like to ignore the sixty-day deadline that is set out in mandatory terms in Utah Code section 78A-6-309(2). This is not allowed under the rule or the statute. The majority is apparently motivated by a desire to avoid reaching the constitutional question presented by D.H. This is not a persuasive justification for ignoring both the mandatory language of the statute and the clear procedures outlined in rule 54.[32]

¶52 The statute and the Rules of Juvenile Procedure were enacted to serve the best interests of children and ensure that child welfare proceedings do not linger. I believe the majority's approach has troubling implications for future child welfare cases because it ignores the plain language of both the statue and the

---

and has mandated that the juvenile court . . . mak[e] that determination." (first alteration in original) (citation omitted)); *Office of the Guardian ad Litem ex rel. S.M.*, 2007 UT 21.

[31] UTAH CODE § 78A-6-102(5)(g).

[32] Though it is true that we have "a duty to construe statutes to avoid constitutional conflicts," *State v. Mooney*, 2004 UT 49, ¶ 12, 98 P.3d 420 (internal quotation marks omitted), this canon of constitutional avoidance "is not a method of adjudicating constitutional questions by other means." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). Constitutional avoidance "is a tool for choosing between competing plausible interpretations of a [rule or] statutory text." *Id.* It is not a justification for avoiding a constitutional challenge by any means necessary simply because we would prefer not to tackle difficult constitutional questions.

rules and creates an unacceptably loose standard for the waiver of mandatory child welfare deadlines. Again, these deadlines were created to protect children. They were not created to yield to the convenience of the State, the court, or the Guardian ad Litem's office. In the rare case, like this one, where waiver of the strict time deadlines would be justified, the court must undertake the proper analysis under rule 54, which includes the requirement that the court consider the children's best interest before granting the continuance. Our clear, strict statutory and procedural rules cannot be so easily disregarded, particularly where a child's interest in expedited legal proceedings is implicated.

¶53 Though I do not agree that the sixty-day deadline was properly waived here, I would hold that waiver of the deadline is possible when the court follows the procedure dictated by rule 54.[33] This procedure is particularly important given the unequivocal, mandatory language of the statute.

¶54 The majority simultaneously claims that its decision to reverse "stems from a straightforward assessment of the procedural history of the case," but the relevant procedural rule is "not properly before us" and "not properly implicated."[34] This is inconsistent. It matters not if an assessment of procedural history is "straightforward" if that assessment ignores a clear rule of procedure. Moreover, I was not aware of any "straightforward assessment" exception to our preservation rule; certainly not one that allows us to conjure new law out of thin air.[35] We have never held that mandatory child welfare deadlines can be informally waived by a joint agreement of the parties, and especially not without any finding on the record concerning the best interest of the children.

---

[33] *See, e.g., S.C. v. Anderson*, 1999 UT App 251, ¶ 16.

[34] *Supra* ¶ 27 n.4.

[35] *Patterson v. Patterson*, 2011 UT 68, ¶¶ 13, 16, 20, 266 P.3d 828 (discussing the limited exceptions to the general preservation rule, which include "exceptional circumstances" and "plain error" and explaining that it "generally would be unfair to reverse a district court for a reason presented first on appeal" but holding that nevertheless the court has a duty to consider *all* controlling authority that is "necessary to a proper decision").

¶55 The significance of the purported waiver was an issue that was raised for the first time on appeal. That explains why "no party . . . ever challenged" the "viability" of the waiver.[36] As the majority points out, "[a] matter unpreserved is a matter not properly presented."[37] "Preservation rules are an essential part of our adversary system," in part because they "assure[] fairness by exempting a party from the inequity of having to defend on appeal on a ground that it had no opportunity to address at trial."[38] At no point below did any party make any argument concerning the significance of the purported waiver. Nor is any argument concerning waiver found in the State's brief on appeal. The Guardian ad Litem was the only party to raise the "waiver" theory that the majority adopts, and she did so for the first time on appeal. Moreover, her briefing on that point was barely adequate and consisted of a few bare, conclusory sentences. D.H. responded to this argument in an equally curt fashion in his reply brief.[39]

¶56 Because the majority has decided to reverse on an unpreserved ground, it finds itself in a no-man's land and cannot claim that a directly relevant rule may be ignored.[40] And even if the waiver theory had been preserved or were a ground for reversal as part of an "assessment of the procedural history,"[41] rule 54 unquestionably applies to all child welfare continuances,

---

[36] *Supra* ¶¶ 30–31.

[37] *Supra* ¶ 30.

[38] *In re Baby Girl T*, 2012 UT 78, ¶ 42, 298 P.3d 1251 (Lee, J., dissenting); *accord Patterson*, 2011 UT 68, ¶ 16 ("Notions of fairness therefore dictate that a party should be given an opportunity to address the alleged error . . . .").

[39] In his reply, D.H. asserted that the district court in fact "refused to accept" any purported waiver when it applied the sixty-day deadline on January 5, 2012.

[40] *See supra* ¶ 29 n.4 (describing the purported waiver as an "element of the context in which we review the decision[]," but failing to explain why rule 54 is not similarly an "element of the context").

[41] *Id.*

and is thus squarely implicated.[42] The majority cannot arbitrarily choose which procedures are relevant to its sua sponte "assessment of the procedural history" as a ground for reversal. To the extent that the waiver theory was raised by the parties on appeal—which is to say, barely—so too was rule 54 raised.[43] And neither of these arguments was preserved below.[44] Accordingly, I respectfully disapprove of the majority's lopsided deployment of the preservation rule and concurrent failure to acknowledge the importance and relevance of rule 54.

¶57 The majority ignores the plain language of Utah Code section 78A-6-309(2) and our directly relevant, duly adopted Rules of Juvenile Procedure. The deadlines contained in the Juvenile Court Act and the procedures contained in the Utah Rules of Juvenile Procedure are designed to protect children and to ensure that child welfare proceedings do not linger. I cannot agree with the majority that the parents, the State, and the Guardian ad Litem's offhand agreement to waive the deadlines is sufficient to justify the disregard of those deadlines. I thus respectfully dissent from the majority's analysis and concur in the result only.

---

[42] *Patterson*, 2011 UT 68, ¶ 20 (noting that the court must consider controlling law when it is "necessary to a proper decision").

[43] In her brief on appeal, the Guardian ad Litem argued that D.H. "invited error," when he "declined to invoke or comply with Utah R. Juv. P. 54, which governs child welfare continuances." D.H. responded to the Guardian ad Litem's rule 54 argument by stating that he "did specifically invoke and comply with" rule 54, but emphasized that because he believed the rule strictly prohibited a court from granting a continuance that would cause a hearing to be held "later than child welfare timelines established by statute," UTAH R. JUV. P. 54(c), he had focused on his challenge to the statute itself.

[44] *Patterson*, 2011 UT 68, ¶ 15 (explaining that the preservation rule is designed to ensure "judicial economy and fairness").